UNITED STATES FIDELITY & GUARANTY CO. *v.* MCCAIN *et al.**

(Division A.   June 16, 1924.   Suggestion of Error Overruled Aug. 28, 1924.)

[101 So. 197.   No. 23834.]

1. RECEIVERS.  *Not liable for disbursement of funds under order of court.*

   Receivers must obey the orders, instructions, and decrees of the court (section 628, Code of 1906; section 388, Hemingway's Code), and are not subject to any liability for the disbursement of funds in their hands under an order made by the court within its jurisdiction, although the order is erroneous, and may be reversed on appeal.

2. RECEIVERS.  *Court without notice to creditors may order receiver to sell property in his hands; sale may be public or private.*

   In the absence of a statute otherwise providing, the court without notice to the creditors of the estate being administered by the receiver may order the receiver to sell the property in his hands at either private or public sale.

3. RECEIVERS.  *Order directing receiver to sell property governed by general statutes regulating sale of property by order of chancery court.*

   The orders of a chancery court directing a receiver to sell the property are governed by the general statutes regulating the sale of property by order of the chancery court.

4.  Receivers. *Law providing sale of property in receivership does not require notice to creditor.*

    Section 651, Code of 1906 (section 413, Hemingway's Code), which provides that the property may be sold on such terms and at such time and place as the court may direct, does not require notice of the sale to be given to creditors.

*Headnote 1.  Receivers, 34 Cyc, pp. 247, 269, 294; 2.  Receivers, 34 Cyc, p. 313; 3.  Receivers, 34 Cyc, p. 309; 4.  Receivers, 34 Cyc, p. 313.

Appeal from chancery court of Lauderdale county. Hon. G. C. Tann, Chancellor.

Suit by the United States Fidelity & Guaranty Company against J. A. McCain and others. From an order dismissing the bill, plaintiff appeals. Affirmed.

*W. M. Hall* and *Jacobson & Brooks,* for appellant.

The bill charged the mismanagement of the estate by the receivers, and an unauthorized and unlawful dealing by the receivers with the assets of the Union Bank & Trust Company which caused the complainant to suffer loss. An order of the court provided that the notes and bonds held by the bank should be sold to the highest bidder at not less than par value and accrued interest, and that the depositors should receive notice of the terms and conditions of the sale at least five days before the date of the sale.

Certain deposits were exchanged in which the depositors received payment in full and said exchanges were made at private sale without notice to other depositors, and the orders confirming same were *ex parte* orders. It thus clearly shows that depositors and creditors of the bank who stood in no better attitude than the complainant were thereby preferred and paid in full for their claims without notice to the complainant.

There is no reason given why this should have been done, and it was a risk assumed by the receivers at their peril. If they thought that they had enough assets to

pay all depositors in full, when they paid some in full they assumed this risk, and dealt with this money, or assets of the bank at their peril, and impliedly guaranteed that all depositors and creditors in like situation would be paid in full.

Receivers attempted to justify their conduct in the payment of some creditors in full by the order of the court having been obtained, which we submit cannot be relied upon to justify their conduct, for the reason that the agreement that the receivers made with the directors whether they were mistaken or not in the outcome of same, cannot justify their action, because they undertook upon their part to present unto the court that complainant would be paid in full, and if they were mistaken in this, they cannot hide behind an order of the court made upon their solicitation, and without notice to the complainant, which resulted in the detriment of complainant. It was the duty of the receivers to take the assets of this corporation and sell them at public sale to the highest bidder, for cash, with notice according to the decree of April 1, 1913, and when they deviated from that decree and attempted to distribute the assets of the bank in full to some creditors in preference to others, they did so at their peril, and the defendants should be held liable for any loss that the complainant suffered on account thereof.

*McBeath & Peebles* and *C. C. Miller,* for appellees.

When counsel for appellant admit that before the receivers exchanged any of the assets for deposits, they procured an order from the chancellor, authorizing same, they admitted themselves out of court.

The only way that a surety on a receiver's bond can keep tract of what is going on, is by the decrees granted by the chancellor. And we do not believe that the court would hold a receiver or surety liable where they act upon the decree of the chancellor. The surety could not

intervene and prevent the receivers from acting upon the decree, and certainly it is that they cannot be held liable. These decrees were final decrees, and not having been appealed from, cannot now be attacked collaterally ten years after they were rendered. 34 Cyc. 374, par. 7.

The record does not show that the receivers used the bank's assets in making arbitrary and preferential settlements with the creditors, nor does it show any favoritism shown to any of the creditors of said bank, but on the contrary, shows that the receivers from the very first depended on the court for instructions and every move by the receivers was authorized and directed by order from the chancery court or chancellor. Every dollar paid out by the receivers was authorized and approved by the court and chancellor.

The liabilities incurred by receivers are the liabilities of the court appointing him and not the liabilities of the parties. They have no authority over him and cannot control his acts; 23 R. C. L., 79-80, section 85; 34 Cyc. 250, par. "C;" 34 Cyc. 294, par. 11; 23 American-English Encyclopedia, 1127, sec. 4; *Schmidt* v. *Gayner,* 59 Minn. 303, 61 N. W. 333, 62 N. W. 265; American Annotated Cases 1913D, page 1117, and note.

*W. M. Hall* and *Jacobson & Brooks,* for appellant in reply.

This proceeding is not a collateral proceeding because this suit was filed by permission of the chancery court of Lauderdale county against the receivers before they had filed their final account, and service of process was had on them before they had filed their final account, and it was a direct attack upon illegal handling of the assets of the bank and was pending when another dividend was made to the creditors of the bank.

Our position is that these trades were void acts of the receivers and were void *ab initio,* and were never bind-

ing on anybody, and that we had a right to attack them as we did. 2 Words and Phrases, 1249, 1250; *McKinney* v. *Adams,* 95 Miss. 832.

In fact there was no *ex parte* order which would have authorized the trading of these assets in private with depositors, the effect of which, would be to enable depositors of the same class to receive an illegal preference over the complainant. *Luckett* v. *Brickell,* 115 Miss. 457; *Sharpley* v. *Plant,* 79 Miss. 175.

SMITH, C. J., delivered the opinion of the court.

The appellees are the receivers of a defunct bank and their sureties, and this suit was brought against them by the appellant, a creditor of the bank, for an alleged loss sustained by it because of the mismanagement by the receivers of the bank's funds.

According to the allegations of the bill, in 1912 the Union Bank & Trust Company, a banking corporation, was placed in the hands of the appellee receivers for the purpose of winding up its affairs and the distribution of its assets. The bank was a depository for Lauderdale county, the surety on its bond therefor being the appellant herein. When the bank was placed in the hands of the receivers the county had on deposit with it the sum of eighteen thousand three hundred thirty-two dollars and seventy-four cents, which the appellant paid the county in compliance with the obligation assumed by it as surety for the bank, and filed a claim therefor with the receivers. The appellant is also the assignee of another deposit of one hundred twenty-eight dollars and seventy-four cents for which it also filed a claim with the receivers. Dividends up to and including May 24, 1917, have been paid on the county deposit amounting to sixteen thousand five hundred twenty-seven dollars and seventy-nine cents, leaving a balance due thereon of one thousand eight hundred four dollars and ninety-eight cents, and on the other deposit to the amount of

fifty-six dollars and sixty-nine cents, leaving a balance due thereon of seventy-two dollars and four cents.

In April, 1913, the receivers were ordered by the court to sell the assets of the bank to the highest bidder therefor at not less than par, and to accept deposit in the Union Bank & Trust Company in payment therefor, and to notify each depositor of the terms and conditions of the sale at least five days prior thereto. A part of the notes and bonds due the bank were not sold under this order, but were sold at private sale at par to depositors of the bank, who gave in payment therefor their checks on the defunct bank, thereby receiving payment in full of the money due them by the bank. The bill challenges the validity of these sales, and prays for a discovery and a decree against the receivers and their sureties for the amount due the appellant on the two deposits hereinbefore set forth. The bill does not allege any fraud on the part of the receivers but that their exchanges of notes and bonds due the bank with certain of its depositors for the amounts due them on their deposits resulted in those creditors obtaining an unlawful preference over the other creditors of the bank. In November, 1920, the court ordered the receivers to file their final account on or before January 15, 1921, which time had expired when this suit was brought without the account being filed. 

It appears from the answers to the bill that the sales to or exchanges with the depositors of the notes and bonds of the bank were made by the receivers in good faith pursuant to orders by the court so to do.

The case was tried on an agreed statement of facts, the substance of which is as follows: There is a balance due the appellant on its two deposits of one thousand five hundred nine dollars and sixty-six cents. The assets of the bank that came into the hands of the receivers amounted to five hundred nine thousand ninety-one dollars and thirty-six cents, and they have paid to the depositors four hundred seventy-one thousand, one hundred sixteen dollars and five cents, leaving a balance due

them of fifteen thousand one hundred five dollars and eighty-five cents for the payment of which there are no funds in the hands of the receivers. The exchange of bonds and notes of the bank with the depositors was made pursuant to orders made by the court, but without notice to the other creditors. After this suit was brought, but without notice to the creditors of the bank, the receivers' final account was filed and approved.

The bill was dismissed.

All questions of procedure that have been or could be herein raised will be pretermitted, and the cause decided on its merits.

As we understand the appellant's complaint, it is that the orders on which the sale or exchange of bonds and notes of the bank were made afford the appellees no protection, because (1) they were made without notice to the other depositors; (2) the court was without power to authorize a private sale or exchange of the assets of the bank; and (3) the depositors with whom the exchange was made received thereby a preference over the other depositors.

Section 628, Code of 1906 (section 388, Hemingway's Code), provides that:

"Receivers shall be subject to the orders, instructions, and decrees of the court, and of the chancellor in vacation," etc.

And the rule is that a receiver is not subject to any personal liability for the disbursement of funds in his hands under an order made by the court within its jurisdiction although the order is erroneous and may be reversed on appeal. 23 R. C. L. 79; 34 Cyc. 250 and 294; 23 A. & E. Enc. L. (2 Ed.), 1127; Ann. Cas. 1913D, 1117.

"A receiver obeying the orders of the court is not a guarantor of the correctness of the court's rulings. Furthermore, when a receiver has paid out money or the fund in his hands in good faith and in obedience to the orders of the court appointing him, he cannot be compelled to make restitution, and he is not personally re-

sponsible. If the court has jurisdiction of the parties and the subject-matter, yet commits a legal error in the disposition of the fund, the receiver because he is obliged to obey such an incorrect order is protected. The mere reversing of an order because it is erroneous does not make the receiver who has acted pursuant to it a wrong-doer, even though the effect of the reversal is to require the person who has received the benefit of it to make restitution, if the court sees fit to require him to do so. If, on the other hand, the court appointing the receiver has not jurisdiction of the parties or has not jurisdiction over the subject-matter, an order made on the receiver may be without warrant or authority of law, and the receiver when obeying such order may be liable.'' 1 Clark on Receivers, section 782, p. 839.

The court in which an estate is being administered by means of a receiver has, of course, jurisdiction of the property therein involved, and through their representative the administrator, of the creditors of the estate, and, in the absence of a statute otherwise providing, may without notice to the creditors order the administrator to sell the property in his hands at either private or public sale. We have no statute regulating specifically sales by receivers, but being made under the orders of a chancery court they are governed by the statutes regulating sales on the orders of such courts. *Howard* v. *Jayne,* 124 Miss. 65, 86 So. 752. The only statute governing the sales of personal property under the orders of such courts that has come under our observation is section 651, Code of 1906 (section 413, Hemingway's Code), which provides that:

''All property may be sold on such terms and at such time and place as the court may direct.''

This statute does not require notice to creditors, and it is unnecessary for us to determine whether it requires sales to be made at public auction for the reason that that question is one of method and not of jurisdiction.

It may be and probably is true that, when these orders complained of were made, both the receivers and the court were of the opinion that the receivers would be able to pay the creditors in full; but this opinion, being merely a mistaken one, and not the result of any fraud charged or proved, on the part of the receivers, cannot, under the rule hereinbefore referred to, render them liable therefor.

*Affirmed.*