Sovereign Camp, W. O. W. v. Prince.[*]

[106 So. 521. No. 25191.]

(Division A. Jan. 4, 1926.)

Insurance. *Warranties in application held not waived because application was made out by insurer's physician.*

Where application for fraternal insurance warranted answers, whether written by applicant or not, false warranty that he had

not had diseases, or been attended by a doctor, was not waived because insurer's physician made out the application; it not appearing that the physician was advised as to true facts, or that insured did not fully understand the answers as written.

---

*Headnote 1. Mutual Benefit Insurance, 29 Cyc., p. 190 (Anno); General rule as to whether medical examiner agent of insurer or insured in making application for insurance, see note in 41 L. R. A. (N. S.) 505; 14 R. C. L. 1177; What constitutes consultation with, or attendance by a physician, within meaning of application of life insurance, see note in 18 L. R. A. (N. S.) 363; 14 R. C. L. 1074; 3 R. C. L. Supp. 337.

APPEAL from circuit court of Scott county.

HON. G. E. WILSON, Judge.

Action by Killis Prince against the Sovereign Camp, Woodmen of the World. Judgment for plaintiff, and defendant appeals. Reversed and judgment rendered.

*Watkins, Watkins & Eager,* for appellant.

*The directed verdict requested in the instruction of the appellant should have been granted by the lower court for the reason that the appellee had failed to reveal information in respect to his physical condition and diseases and symptons which he had theretofore had and were material to the risk, and under the terms of the application and the beneficiary certificate, his policy thereafter became void at the option of the appellant. Fidelity Mutual Life Ins. Co. v. Miazza, 93 Miss. 18, 46 So. 817; Hoke v. Insurance Co., 103 Miss. 275, 60 So. 218.*

By the provisions of the application and just above the signature of the appellee appears the following language: "I, the undersigned applicant, declare that I have read the above questions and answers, and for the purpose of this application I declare and warrant that the answers recorded to the above and foregoing questions are full, complete, true and correct." His testimony shows that he was not mislead or fraudulently induced to sign the application, and he, himself, sets forth in his plea that

he had the opportunity to read it but did not do so. It is thus seen that the appellee warrantied the truth of his answers.   His statements were not merely representations but warranties in the strict legal sense.   See *Citizens Nat'l Life Assurance Co.* v. *Swords,* 109 Miss. 636, 68 So. 920.  In this case, a verdict for the assured was affirmed because, as is specifically set out in the opinion, the contract of insurance expressly provided that "all statements made by the insured shall in the absence of fraud be deemed representations and not warranties." In the case at bar just the opposite provision appears, the answers of the applicant being made warranties by the terms of the contract; and we submit, as held in the case last cited, that as the evidence conclusively showed certain answers of the appellee to be untrue, the warranty was breached and the directed verdict should have been accordingly given for the appellant in the lower court. See also, *Sovereign Camp, Woodmen of the World* v. *Sloan,* 136 Miss. 557, 101 So. 195.

Dr. Cloud says if the real facts had been before him the application would have been rejected.  No one can be blamed for this state of facts except the appellee himself. He states in his counter-notice and plea that he was requested to sign the same by Dr. A. L. Monroe and he did sign it without reading it himself or without having it read to him.   His failure to read that which he had ample opportunty to read cannot now be placed upon this appellant.  He was not fraudulently induced to sign the application but neglected to read what he was signing. The appellant had the right to assume that his answers were correct and he as an intelligent man, was bound to know and should have known that he was signing an application for insurance and wherein he had given certain information in respect to his personal history.   We therefore, submit that he has breached these warranties of his application, and under the four Mississippi cases cited, he cannot now recover upon the certificate.  See, too, *Columbian Mutual Life Assurance Co.* v. *Herrington et al.,* 104 So. 297; *Union Mutual Aid Ass'n.* v. *Carroway*

(Ala.), 78 So. 792; 14 R. C. L. 1073, par. 252; *Eminent Household of Columbian Woodmen* v. *Prater* (Okla.), 103 Pac. 558; *Smith* v. *Aetna Life Ins. Co.*, 49 N. Y. 215; *Geach* v. *Ingal*, 14 Mass. W. 95; *March* v. *Metropolitan Life Ins. Co.*, 186 Pa. 629, 65 Am. St. Rep. 887, 40 Atl. 1100; *White* v. *Providence Saving Life Assurance Society* (Mass.), 27 L. R. A. 400; 14 R. C. L., page 1069, par. 248.

A statement that insured had never had a cancer is a statement material to the risk, and its falsity a good defense to the policy. *Brisou* v. *Metropolitan Life Ins. Co.*, 115 S. W. 785. Where, in an application for life insurance, assured expressly warrants the truth of the answers made to the medical examiner and it is stipulated that the policy shall be avoided if any answer be untrue, the contract is the law of the case, under Acts of 1906, page 86, No. 52, and the policy is forfeited, where it is proved that the assured answered untruly that she had never had a chronic or persistent cough. *Bertrand* v. *Franklin Life Ins. Co. of Illinois*, 44 So. 186, 119 La. 423. See, also, *Hoffman* v. *Metropolitan Life Ins. Co.*, 131 N. Y. S. 588, 147 App. Div. 893; *Alexander* v. *Metropolitan Life Ins. Co.*, 64 S. E. 432, 150 N. C. 536; *Harris* v. *Security Mut. Life Ins. Co.*, 170 S. W. 474, 139 Tenn. 325, L. R. A. 1915-C 153, Ann. Case 1916-B 380; *Talley* v. *Metropolitan Life Ins. Co.*, 69 S. E. 936, 111 Va. 778; *Smith* v. *Bankers' Life Ass'n.*, 157 Ill. App. 236; *Mutual Life Ins. Co.* v. *Robinson*, 80 A. 1085, 115 Md. 408.

Even admitting for the sake of argument, that Dr. Monroe did presume to fill in the answers to the questions, he could not have bound appellant or committed a waiver in respect to those things to which he had no knowledge. As we understand it, the fact that Dr. Monroe was the Camp medical examiner and filled out the questions in the application in the absence of fraud or misrepresentation does not prevent the appellant from making the defense here interposed. Mr. Prince had ample opportunity, if he had so desired, to read the ap-

plication which he signed, and which for reasons of his own he did not do.

*Eastland & Mize* and *E. O. Sykes,* for appellee.

The only question argued is that the court erred in not granting the peremptory instruction requested by appellant. It is claimed that the answers of the appellee to the questions relating to his personal history are warranties. The argument boils down to the fact of his spitting up blood a few times, and perhaps also once upon a time Doctor Moody made him one visit when he says he had the "flu." The argument in this case for the appellee can be made very short. The entire answer to the argument of counsel for appellant is that we made no warranties and no representations, whatsoever. Their agent, Dr. Monroe, who was also the family physician of this appellee took upon himself to answer all of these questions, and whether or not he answered them correctly is no concern of ours. In doing this he was acting as the agent of the appellant company and they are bound by his action. They cannot claim that these answers are untrue. The testimony of the appellee shows that he answered truthfully every question propounded him by Dr. Monroe and this is really an end of the controversy.

The constitution of the appellant company, the printed directions in the application blank and the policy itself contemplate and provide that the physician can record these answers for the applicant. In fact, it is made the duty, by this application blank, of the physician to explain the meaning of the terms of this personal history. The court will note that a number of these terms are technical medical expressions which the average man will not understand. In this particular case this appellee is a common laborer. He testifies that he answered truthfully all questions propounded him by Dr. Monroe. Dr. Monroe was not put upon the stand by the appellant

141 Miss.—25.

to contradict the testimony of the appellee, but rather the appellant relied upon Dr. Monroe's proof of loss, which of course is contradictory both of his examination of appellee and also of the testimony of the appellee in this case. In passing however, though it is not of importance in this case, I must differ with counsel that these answers under personal history are warranties.

We have no quarrel with the authorities from this state cited in the brief of appellant. We submit that the case of *Fraternal Aid Union* v. *Whitehead,* 87 So. 454, 125 Miss. 153, is very much in point. The case of *Fidelity & Casualty Co. of N. Y.* v. *Cross,* 95 So. 631, 131 Miss. 632, is more directly in point and is really decisive of the case. The rule is also well stated in syllabus No. 2 of *Pudretzky* v. *K. of L. Lodge,* 76 Mich. 428. Again section 5078, Hemingway's Code, (section 215, Code of 1906) makes the physician in this instance the agent of the appellant company.

*Watkins, Watkins & Eager,* in reply, for appellant.

Chief reliance for an affirmance of this case rests upon the theory that Dr. Monroe, the examining physician, was the agent and representative of the appellant and that the company cannot now be heard to set up by way of defense any answers written in the application which were, and are, untrue. This position would be well taken if the appellee had further shown by testimony that full disclosures were made to Dr. Monroe as to appellee's present and past physical condition and diseases, and Dr. Monroe had then assumed to construe such information and frame the answers which appear in the application. This, we understand, is the principle applied in *Fidelity Mutual Life Ins. Co.* v. *Miazza,* 93 Miss. 18, 46 So. 817, and *Hoke* v. *Ins. Co.,* 103 Miss. 275, 60 So. 218.

Neither the plea nor the proof attempts to show that he did sign the application relying upon any represen-

tations of Dr. Monroe. He had ample opportunity to read the application and, as we understand it, in the absence of fraud and having failed to make full disclosures as to his condition to the examining doctor, he is now bound by the terms of the application. If we understand *Sovereign Camp Woodmen of the World* v. *Sloan,* 136 Miss. 557, 101 So. 195, this court has already held that the answers of the applicant in this particular application are warranties and not merely representations. We do not see how any other result could be reached because the answers are made warranties in no uncertain terms by the language of the application, and the beneficiary's certificate itself containing as its opening clause, "for and in consideration of the warranties contained in the application of Killis Prince."

Argued orally by *P. H. Eager,* for appellant, and *E. O. Sykes,* for appellee.

McGowen, J., delivered the opinion of the court.

Killis Prince, appellee, filed his declaration against Sovereign Camp, Woodmen of the World, appellant, based upon a policy of insurance issued by the Woodmen of the World to Prince, based more particularly upon a clause of said policy providing for the payment of five hundred dollars in the event the insured became totally, permanently, and wholly prevented for life from pursuing any and all gainful occupations. The defendant filed a plea of the general issue together with notice under the general issue that the plaintiff, Prince, had warranted, in a written application for a beneficiary's certificate issued to him, that he was in good health. In this plea it was stated that Prince warranted that he had never had paralysis, tuberculosis, appendicitis, or spitting up of blood; that he had never had any other diseases; and that he had not within the past five years been attended by any other physician than was stated in the application. It was then alleged in such notice that said warranties were false, in that the plaintiff had been af-

flicted with tuberculosis, appendicitis, paralysis, and spitting up of blood, and that because of the agreement of the plaintiff with the defendant that if he had falsely answered as to these particular items the policy issued thereon would be rendered null and void.

The plaintiff, Prince, submitted to the company proofs that he was totally disabled, having suffered two strokes of paralysis; also other proofs upon forms furnished by the fraternal insurance organization, among them being that of Dr. A. L. Monroe as Prince's family physician, in which Dr. Monroe certified that Prince was permanently, totally disabled. But he further certified that Prince had been suffering from pulmonary tuberculosis for a period of ten years, and that Prince had been attended by W. G. Gill of Newton, Miss. The application of Prince for insurance, together with the physician's report of examination, were made out by this same Dr. A. L. Monroe, in which the physician certified to the insurance order that the applicant, Prince, was a first-class risk. All questions were answered favorable to the applicant and signed by the camp physician, Monroe; the application filled out and the questions to be answered and recorded by the medical examiner signed by Killis Prince. The following questions and answers were made by the applicant:

"Q. Have you now or ever had any diseases of the following named organs, or any of the following diseases or symptoms: Asthma, bronchitis, chronic catarrh, chronic cough, consumption, tuberculosis, la grippe, pleurisy, pneumonia, spitting up of blood, or any other disease of the throat or the respiratory organs? A. No."

And, after mentioning most of the diseases which are prevalent in this section, question No. 11 was propounded:

"11. Have you ever had any disease or injury not referred to before? A. No."

The originals of the physician's report of examination and of questions to be answered by applicant and re-

corded by medical examiner are before us.   They are both evidently in the handwriting of Dr. A. L. Monroe.

Mr. Prince testified that within the five-year period he had had a doctor attend him when he was ill with flu. He also testified as follows:

"Q.  Mr. Prince, did you ever suffer with spitting up of blood?  A.  I have had measles; when I had measles I spit some blood after I had the measles."

Then the following:

"Q.  Did you ever have a hemorrhage?  A.  What do you call a hemorrhage?

"Q.  Hemorrhage of the throat or of the lungs?  A. I told you all the hemorrhage I had was spitting up blood after I had measles.

"Q.  What was the cause of that?  A.  I spit up a few mouthfuls of blood.

"Q.  Did you ever vomit any blood?  A.  No, sir.

"Q.  You spit up a few mounthfuls?  A.  Yes, sir; spit some blood out of my mouth."

It will be noted from this quotation from Mr. Prince's testimony that he had been afflicted with influenza, with measles, and with spitting up of blood, which facts were not mentioned in the application signed by Prince.  Measles, influenza, and spitting up of blood are such diseases as would have been investigated by the insurance order, had it been advised of the facts by the applicant.

The following excerpts from the testimony of Mr. Prince upon the questions of the application for membership and the condition of his health are here set out *verbatim*:

"Q.  What was the condition of your health when you were reinstated?  A.  I was in good health, doing hard labor.

"Q.  Had you ever had appendicitis?  A.  No, sir.

"Q.  Had you ever had tuberculosis?  A.  No, sir.  . . .

"Q.  I will ask you to state if there was any false statement in your application.  Did you make any false

statement in your application? A. No, sir; not according to my knowledge. . . .

"Q. Who was the camp physician? A. Dr. Monroe.

"Q. Did Mr. Monroe examine you when you carried him the application, or when you went before him with the application? A. Yes, sir; I went to Dr. Monroe. He is a good friend of mine, my family physician, told him what I wanted to do, he said, 'All right; come on down to the house.' And he stripped my body and examined my body and patted me on the shoulder, and says, 'I am going to pass you, old boy, O. K.'

"Q. Now, Mr. Prince, in filling out your application, who did it, you or the doctor? A. The doctor filled it out.

"Q. Who answered the questions, you or the doctor? A. The doctor answered them. . . .

"Q. You stated that Dr. Monroe was your family physician? A. Yes, sir.

"Q. How long had he been your family physician? A. Somewhere about five years.

"Q. Had you ever had any physician besides Dr. Monroe in that five years? A. Yes, sir; I had Dr. Moody.

"Q. When? A. Had him in my family with the flu.

"Q. I mean what year did you have a physician with you? A. Well, he came to see me once with flu. . . .

"Q. State whether or not you made any false statement to Dr. Monroe when he took your application? A. No, sir."

Upon the theory that the camp physician was the agent of the fraternal insurance order, the court below gave a peremptory instruction for the plaintiff and the jury returned a verdict for the plaintiff, and judgment was entered in his favor for five hundred dollars against the Sovereign Camp, Woodmen of the World. The defendant fraternal order asked for a peremptory instruction, which was by the court refused, and the question consequently presented here for decision is, Having failed to reveal in his application for insurance that he had been

afflicted with other diseases and the spitting of blood, did the fact that the camp physician made out the application for Prince waive the warranties? Prince had signed this statement in his application:

"I hearby certify, agree, and warrant that all the statements, representations, and answers in this application consisting of two pages as aforesaid, are full, complete, and true, whether written by my own hand or not, and that any statements made by me for reinstatement shall be warranties, and I agree that any untrue statements or answers made by me in this application, or in any application for reinstatement, or to the examining physician or any concealment of facts in this application or to the examining physician, intentional or otherwise, . . . shall make my beneficiary certificate void."

In the case of *Citizens' National Life Ins. Co.* v. *Swords,* 109 Miss. 635, 68 So. 920, we held that—"There is a well recognized distinction between 'representations' and 'warranties.' A warranty must be literally true and its materiality cannot be the subject of inquiry. A representation needs only to be substantially true, and if it not material to the risk, in the absence of fraud, its falsity will not invalidate the policy."

In the case of *Sovereign Camp, Woodmen of the World* v. *Sloan,* 136 Miss. 557, 101 So. 197, Sloan, in his application for insurance, answered, "No," to this question:

"Have you consulted or been attended by a physician for any disease or injury during the past five years?"

And the answer here set up the fact that he had not been attended by a physician for a disease within the five years referred to; in fact, this is the same fraternal order, and the same form of application as was under review in the Sloan case in which Chief Justice SMITH said:

"Hardening of the arteries is so well known to be a disease and not a mere temporary ailment that judicial notice of that fact may be taken, so that in stating that he had not consulted or been attended by a physician for

any disease, Sloan breached his warranty of the truth of his answers hereinbefore set forth, and consequently the policy issued to him may be avoided at the appellant's option. It is unnecessary for us to pass on the appellant's contention that the disease contemplated in the question propounded to Sloan is one that 'is material to the risk which the appellant assumed by issuing the policy on Sloan's life, for the reason that, assuming for the sake of the argument that there is merit in this contention, hardening of the arteries is well known to have a tendency to shorten life, and such a disease is undoubtedly material to the risk.''

Counsel for Prince seems to concede that the warranties were material to the risk. Certainly measles followed by the spitting up of blood in an adult person—one over thirty years of age—and influenza, were such diseases as might develop serious impairment of health and shorten life. So that the warranties as to diseases were material in our opinion, and should have been stated by the applicant to the physician. It will be noted that Prince's only statement is that he made no false statement, and counsel says in his brief referring to the instant case:

''In our case, he (Prince) truthfully answered all questions propounded to him by the doctor. This record is absolutely silent as to whether or not the doctor propounded a single question to Prince and just what occurred between the doctor and Prince. So that, in our opinion, this case does not fall within the rule announced by this court in the case of *Fraternal Aid Union* v. *Whitehead,* 125 Miss. 153, 87, So. 453, wherein we decided that, 'where a state manager of a benefit society, whose powers are not limited by the by-laws of the society, makes out an application for an applicant for a benefit certificate, and writes the answers to questions propounded to the applicant, and interprets the meaning of such questions, and writes answers after having the full facts explained to him by the applicant, the answers will not be held warranties so as to avoid the certificate isued there-

on, even though not literally true. If they are not false, considered in the light of the facts made known to the agent, or if not false in the light of his explanations of the meaning and purpose of the questions asked, they will not avoid the policy or certificate.' "

If it be conceded that Dr. Monroe, the camp physician, was the agent and general representative of the Sovereign Camp of the Woodmen of the World in making out this application for Prince, as under the laws of the order it was his duty so to do, yet this does not relieve the applicant from the duty to fully and thoroughly disclose the condition of his health in response to the questions propounded in the application, and in this regard there is not a line to show that Monroe, the camp physician, was advised as to Prince's having had the disease of measles followed by the spitting up of blood. There is not a line to show that Prince made known to the physician that he had suffered from an attack of influenza, or "flu," and that at the time he was treated by another physician, Dr. Moody. So it may very well be true that Prince made no false statements to the doctor as sworn to by him in his examination on the witness stand, and yet, at the same time, he may not have made true statements, or any statements at all on these important and material points; nor does the testimony of Prince show that he did not fully understand each and every answer as written down by the physician. Of course, we are not called upon to harmonize this camp physician's statement made in the application for insurance that this man Prince was a first-class risk, and then, when misfortune overtakes the applicant and he is stricken with paralysis, he answers that he has had tuberculosis for ten years, and writes a letter to the fraternal order that applicant had a hemorrhage, which he attended, some years before he made the statement to the company in which he recommended Prince as a "first-class" risk.

Our sympathy goes out to this applicant in his misfortune, but he made the contract himself, and is pre-

sumed to appreciate the effect of his warranties upon the validity of the policy which he was thus securing.

This is not a case made out here that the agent of the Sovereign Camp, knowing the facts and in explaining the questions to the applicant, advised misleading answers to the inquiries contained in the written application for life insurance; neither is there any claim here that the applicant signed the application under any misapprehension of the facts stated therein or ignorance of the effect of his signature thereto, or that he had made disclosure of the facts to the camp physician, and we think the court below erred in giving a peremptory instruction for the plaintiff, and for the reasons set forth above we think a peremptory instruction should have been given for the defendant.

The judgment of the court below is reversed, and judgment here for the appellant, Sovereign Camp of the Woodmen of the World.

*Reversed, and judgment here.*