14089

HANNON *ET AL.* v. MECHANICS BUILDING & LOAN ASS'N OF SPARTANBURG, S. C., *ET AL.*
DIXON *ET AL.* v. CUDD

(180 S. E., 873)

*Messrs. Evans, Galbraith & Holcombe,* for appellant,

*Mr. L. G. Southard,* for respondents,

June 12, 1935.

The opinion of the Court was delivered by Mr. A. L. GASTON, ACTING ASSOCIATE JUSTICE.

On the 20th of December, 1934, Judge Sease granted a decree for the sale by the receivers of J. N. Cudd of certain real estate belonging to the estate of J. N. Cudd. The suit was begun by a petition in behalf of the co-receivers of the estate of J. N. Cudd, which set forth in detail the matters and facts upon which the judgment of the Court was sought for leave to sell and convey the real estate to T. P. Sims for the sum of $60,500.00 upon the terms of his offer of purchase. Upon this petition a rule was issued whereby the parties named as respondents herein were ordered to show cause why the co-receivers should not be authorized to effect the proposed settlement, and convey the real estate. A consent order of reference was taken referring the matter to the master to take the testimony and to report thereon. No return to the rule or other pleadings apparently were served or filed, and it appears that J. N. Cudd was not a party against whom the rule to show cause was directed. He was not a party to the proceeding, and did not apply to the Court for leave to intervene, or to be allowed to appear.

The decree of Judge Sease, among other things, shows that the master's report was filed on the 3rd of December, 1934. Thereafter, the attorneys for J. N. Cudd, the attorneys for J. W. Boyd as receiver for J. J. Cudd, and the attorneys for J. J. Cudd, served and filed exceptions to the report of the master. In the meanwhile the attorney for the petitioners, who are the co-receivers of J. N. Cudd, served notice that he would move for a decree in this case. At the hearing Mr. Eugene S. Blease, as attorney for J. J. Cudd, stated that if the sale of this property were held open for a period of sixty days, that he would withdraw all of his exceptions to the master's report. Mr. A. E. Tinsley, representing J. W. Boyd, as receiver, stated the same thing. The report was confirmed and all exceptions overruled.

After a careful consideration of the record herein on appeal, we find that the salient facts are fairly and succinctly stated in the brief of appellant. This statement is adopted and shows that on the 8th day of December, 1930, the appellant, J. N. Cudd, who is now in receivership, executed and delivered his promissory note by which he promised to pay to T. P. Sims, two years thereafter, the sum of $53,616.24 with interest from December 10, 1930, at 8 per cent., payable annually. The maker's son, J. J. Cudd, who is also in receivership, indorsed the note before delivery.

To secure the payment of the note, J. N. Cudd simultaneously conveyed, by way of mortgage, to T. P. Sims three pieces of real estate, to wit: (1) An undivided one-half interest in a business lot on the corner of East Main and Dunbar streets in the City of Spartanburg, on which are located two or three wood and tin buildings and a filling station; (2) a lot fronting 22 feet on East Main street in the City of Spartanburg on which is located a building, with a restaurant occupying the ground floor (the first mortgage of approximately $16,500.00 on this property is held by Provident Mutual Life Insurance Company); and (3) a 75-acre farm in Spartanburg County. The Sims mortgage is a first mortgage lien on the half interest in the corner lot first above described and on the 75-acre farm.

Unpaid taxes and paving assessments charged against the three pieces of property amount to approximately $8,686.79. The two pieces of business property are rented for $3,857.50 a year, and the farm appears not to be rented at the present time. There has been paid on the Cudd note held by T. P. Sims the sum of $2,040.00, leaving unpaid thereon the sum of approximately $68,733.44, including interest.

The mortgagee, T. P. Sims, who has since died, made an offer to purchase the three pieces of real estate for a total purchase price of $60,500.00, from which he proposed to deduct and pay all taxes and paving assessments, the mortgage held by Provident Mutual Insurance Com-

pany, the commission of J. N. Cudd's receivers, and the fee for the receiver's attorneys. It is proposed to credit the remainder of the purchase price on the Sims note and to prove the balance of the note as a general claim against the estate of J. N. Cudd.

The Circuit Judge, affirming the master's report, ordered the receivers of J. N. Cudd, after advertising six weeks in the Spartanburg *Herald,* to accept bids up to March 1, 1935, with upset prices equal in amount to the sum offered by T. P. Sims fixed, and, in case of no higher bids, to accept the Sims offer. From this decree, J. N. Cudd has appealed to the Supreme Court.

Notice was served by the attorney for the receivers and duly filed of a motion before this Court to dismiss the appeal on the grounds that it is frivolous, without merit, intended solely for delay, and because J. N. Cudd is not a party to this suit.

Appellant makes nine exceptions which are argued as involving five questions.

The first two questions raised are that the Court below erred in ordering a sale of the premises at the present time at a fixed upset price for cash.

Manifestly no issue as to the propriety, wisdom, or necessity of placing the property of J. N. Cudd in the hands of receivers can arise in this case, but all such questions have been finally adjudicated and settled, so that no dispute can now arise in regard to the fact that the Court after mature deliberation has taken charge of the real estate and other property of J. N. Cudd, to be handled by the receivers and disposed of as the Court shall direct for the benefit of all creditors, who have a paramount interest in the assets of an insolvent person, for the protection of the lien creditors, and for the best interest of the owner of the property, who by reason of financial misfortune finds himself unable to pay his debts and forced into receivership. The appellant has had his day in Court in re-

spect to these matters and consented to the order for receivership which was granted on motion of certain of his creditors and is now bound by such proceedings. *Penn Mutal Life Insurance Co. v. Cudd,* 172 S. C., 88, 172 S. E., 787.

3. A sale of receivership property by the receiver, under an order of Court, is a judicial sale. The Court has the right and power to determine the terms and conditions of the sale in advance and to fix the minimum price. Tardy's Smith on Receivers, Vol. 11, page 1781, § 640; *Hewitt v. Walters,* 21 Idaho, 1, 119 P., 705, Ann. Cas., 1913-C, page 35.

The Courts of this State have uniformly exercised the power to order that a receiver, duly appointed, shall sell the real estate and other property of the person or corporation whose assets are in the hands of receivers, in order to distribute the proceeds among creditors, stockholders, and other parties interested, and to liquidate and wind up the affairs of such insolvent person or corporation. It has been recognized that it is often of great importance that such assets should be disposed of by a receiver, duly appointed, because of his special knowledge of such assets; and because the receiver by law takes the manual possession and custody of the property for the purpose of disposing of it and distributing the proceeds. *Buist v. Merchants' & Planters' Bank,* 65 S. C., 487, 43 S. E., 958.

The sale of real estate made by the receiver is a judicial sale, subject to the confirmation of the Court and the order directing the sale, and the advertisement thereof should state definitely the time and place where the bids may be received. *In re Ragland,* 172 S. C., 544, 174 S. E., 592.

4. When the Court deems it expedient for the welfare of the parties to the order and for the trust, it may make an order to the receivers to sell at private sale, or the Court may accept an offer made directly to the Court,

or may ratify a sale already made. Clark, Law of Receivers, § 618.

The trial Court, in the first instance, when the decree ■ of sale is entered, may in the sound and informed discretion of the Court require, direct, and order that the property should be sold for a sum not less than a fixed minimum or upset price. *Union Trust Co. v. Curtis,* 182 Ind., 61, 105 N. E., 562, L. R. A., 1915-A, 699; Section 619, Clark; 34 Cyc., 319, 320.

Whether a sale by a receiver shall be for cash or ■ credit is ordinarily under the control of the Court. 34 Cyc., 320.

Property in the hands of a receiver is *in custodia* ■ *legis, Peurifoy v. Gamble,* 145 S. C., 1, 142 S. E., 788, 71 A. L. R., 783; although the title logically remains in the insolvent party for whose assets the appointment of a receiver was made, to be disposed of as the Court may decide, through its officer the receiver. *In re American Slicing Machine Co.,* 125 S. C., 214, 118 S. E., 303.

The possession of the property of the insolvent ■ debtor in the hands of the receiver as an officer of the Court is the possession of the Court which appointed him. He is the medium through which the Court acts in the execution of its orders and decrees. The receiver has only such general powers, rights, and duties as may be conferred upon him by the rules of Court (Rule 69, Circuit Court Rules); or by the statute law of the state; or more expressly by the special orders and decrees of the Court.

Therefore, the Court has the full power and nec- ■,■ essary authority to order the receiver to dispose of the property in such manner as may seem in the mature judgment of the Court to be for the best interest of the parties concerned. *Holliday et al. v. Hemingway et al.,* 137 S. C., 124, 134 S. E., 530. So also the advice of the receivers and their opinions in regard to the value of

the property, the manner, time, and place of disposing of it, and in regard to its care and custody, are entitled to great respect and weight. *Hughes v. Wilburn,* 156 S. C., 443, 153 S. E., 487.

Probably the real and serious difficulty in any law suit is due to the problem of correctly applying the fundamental and primary precepts of the law to the issues and facts presented by the exigencies in the trial and decision of each case.

1. The contention is made by the appellant in Exceptions 1, 2, and 5, which argued as one question, that it is confiscatory, unjust, and unfair both to his unsecured creditors and himself to put this property on the market now in view of the depression, and of improving economic conditions and in the face of an advancing real estate market. The main controversy in this case turns upon the expediency of selling at the present time for cash the property heretofore described. It is claimed that the value of this property as a whole is in excess of $100,000.00 and that its value will be enhanced as conditions improve. On the other hand, the admitted indebtedness against the property due on the two mortgages with interest and on the unpaid taxes and paving assessments amounts to a total of $93,920.23, so that there is practically no equity in the present value of the property. In addition to this, all of the debts are past due and have accumulated over a period of serveral years, while the income is insufficient to meet the fixed charges on the property and the debts will increase as rapidly as the property will enhance in value, under any reasonable anticipated recovery in prices and values. High-class realtors, who are gentlemen of unimpeachable character and integrity, testified in the case and there was a wide scope of variance in the valuation placed on the property by the witnesses, who were familiar with the property and with business conditions in the fair City of Spartanburg. The report of the referee, which is concurred in by the decrees,

goes fully into all of these facts and the evidence was carefully considered.

Mr. J. N. Cudd, and his witnesses, in their testimony, expressed the opinion that the value of real estate is looking up a little now, and that business seems to be picking up. Mr. Hudgens, when asked the question, "Do you feel optimistic as to real estate in the future?" answered, "Yes, I hope so." Mr. Harris testified that he did not know how many years will be required for a return to normal conditions. Mr. Epton testified along the same lines. Mr. Cleveland testified that there had been a very terrific decline in real estate since so many banks and building and loans closed, and that, as a creditor of Mr. Cudd, he thought a deferred sale would really bring more money. The testimony in regard to the value of the real estate relates largely to offers which were made to purchase the property in good times, before the collapse of the banking structure and before the receivership. It is a well-known fact that property today will not bring what it would have brought several years ago. But the future fluctuation in values and market conditions are unknown, problematic, and largely speculative. There is no certainty that values will return to the high peak of the past and the tendency seems to be for values to adjust themselves to a lesser level. Be that as it may, it is clear that Judge Sease, who not only resides in the City of Spartanburg but is recognized as a jurist of great fairness, has found the facts justify a sale at the present time of the property, notwithstanding the deplorable picture of present conditions which is painted by the appellant. We think the judgment of the Circuit Judge is fully supported by the testimony, and under the rule which is now well settled this Court will not disturb the findings of fact by the master concurred in by the Circuit Judge, in matters of equity jurisdiction, unless such conclusions are against the clear preponderance of the evidence or without any supporting evidence, and it is incumbent on the appellant to convince

the Court that the Circuit Judge was in error in the conclusion reached by him on the facts. *Fant v. Easley Loan & Trust Co.*, 170 S. C., 61, and cases cited on page 78, 169 S. E., 659, 665. Therefore, the exceptions relating to this point are overruled.

2. The further point is made that the effect of ordering a cash sale of this property now is to preclude all bids except that of the mortgagee who is entitled under the decree to credit the amount bid with the amount due him on his mortgage and to prove his claim for the balance as an unsecured creditor, under Exceptions 3 and 4. The broad discretionary power of the Court of equity to order the sale of real estate for cash, or for part cash and part on time, has always been recognized and acted upon in this State; and where the record does not show the existence of any equities which would warrant postponement of any payment of a part of the purchase price, the Court by its decree has directed that the sale be entirely for cash. *Peeples v. Snyder,* 141 S. C., 152, 139 S. E., 405. The decree in the present case, having fixed a minimum price, the payment of which is guaranteed or assured under the terms of the offer of T. P. Sims, as a mortgage creditor, to buy the property at this price, thereby protects the interest of all of the parties herein; for the reason that such provision in the decree vouchsafes the property against an unreasonable sacrifice and determines in advance the lowest price at which the sale will be confirmed. The decree further provides for the advertisement for six weeks of the sale of the property and for the reception of bids by the receivers until 12 o'clock noon March 1, 1935. No impediments are placed on the free and untrammeled bidding upon the property, but the inducement prevails for others to bid upon the property; and the way is open to creditors to increase the minimum price for the protection of their own interest, and likewise to the public at large. The property is to be offered for sale in separate parcels; and only in case there are no bids above the

upset price on the properties either separately or as a whole, is the offer of T. P. Sims to be accepted. Therefore, it is not necessary for one buyer to purchase all of the property nor for one buyer to raise in cash the full value of the entire property; but separate bids may be made and the amount of cash to be raised depends on the extent of the bidding. Therefore, appellants have failed to show that the Circuit Judge in any manner has abused his discretion in decreeing that the property be sold for cash, having due regard, in good conscience, to the rights and interests of all parties; the appellants have failed to show that a cash sale would probably result in a deplorable sacrifice of this property or any part thereof. The exceptions relating to this question are therefore overruled.

3. The next question raised by the exceptions is in regard to the sale of the property by the receivers at a private sale, after advertisement and the filing of bids, on the grounds that such a sale is contrary to the statutory law regulating judicial sales; and that the property should be sold by the master at public outcry where competitive bids could be allowed. It is a sufficient answer to this exception to point out that under the law the receiver is a representative of the Court of equity to conduct sales of real estate and is clothed with authority equal to that of the master. *Buist v. Merchants' & Planters' Bank,* 65 S. C., 487, 43 S. E., 958; *Pilliod v. Angola Ry. & Power Co.,* 46 Ind. App., 719, 91 N. E., 829; *Pewabic Mining Co. v. Mason,* 145 U. S., 349, 12 S. Ct., 887, 36 L. Ed., 732; Clark, Law of Receivers, § 591.

It is also argued that the sale by the master violates the provisions of the recent acts of this State, because the master found "while legally this proceeding is different from a mortgage foreclosure, yet in substance it is practically the same as one, and as the mortgagee is to pay the receiver's commissions" he recommends that the commissions be fixed at the same amount that the master

would receive, if this were a foreclosure action. It will be seen, therefore, that the master does not find that this is a suit for the foreclosure of real estate mortgage, but on the contrary states that this proceeding is different in law therefrom. Also the reasoning of the master in his report related to the commissions to be allowed to the receivers for the sale of the property. Nowhere does the master find that this is a suit to foreclose a real estate mortgage, nor does the circuit decree so hold; and the record clearly shows to the contrary and that this suit was begun by petition for leave to sell and convey the property to T. P. Sims. The decree enlarges the scope of the petition and orders the property sold by the receivers after bids have been filed pursuant to advertisement. The decree states further that "it is the intent and purpose of this decree to see to it that each of these separate properties brings the very highest dollar, and the Court will be delighted if the sum total will bring the amount of the debt, together with the taxes and the costs," "and provision is made for separate bids on the separate properties to the end that it can be sold in the most advantageous way for the benefit of J. N. Cudd and J. J. Cudd." It does not appear, therefore, that the Acts of 1932 (37 St. at Large, p. 1529), 1933 (38 St. at Large, p. 511), and 1934 (38 St. at Large, pp. 1187, 1266, 1346, 1620), relating to judicial sales, have any application to the law of this case. Nor does Exception eight expressly assign as error such proposition of law; and the exception fails to raise this question and violates Section 6 of Rule 4 of this Court and is too general to be considered. *Adams v. Wilkes,* 118 S. C., 93, 109 S. E., 804; *Union Bleaching & Finishing Co. v. Barker Fuel Co.,* 124 S. C., 458, 117 S. E., 735.

However, the appellant's argument under the exception vigorously assails the decree on the ground that the decree appealed from strips from the appellant every vestige of the rights conferred by these Acts, which now appear as Section 8712-1, Section 9078-1, and Section 9501 of the 1934 Sup-

plement Code of Laws for South Carolina. The entire scheme of the circuit decree in this case clearly preserves for the protection of the appellant all of the beneficent provisions and safeguards of the statutory law of this State. The proceeding was begun to act upon the bid of T. P. Sims to buy the land, and the decree keeps the bids open for sixty days instead of thirty days, which is in appellant's favor; no requirement is contained in these Acts for a receiver's sale of real estate to be had at public outcry and the law permits the private sale in such cases; the Circuit Court has already taken ample testimony as to the true value as of the date of sale of the real estate ordered sold, and in fact the testimony at the references was devoted largely to the market value in the past, present, and future of the real estate and to its rental value and income therefrom; and the mortgaged premises have been in the possession of the receivers, who have made due allowance for rentals and income from the property, and administered the property under the order of the Court as fully and as effectually as the law requires; the circuit decree sustains the master and sets forth that it can be seen at a casual glance that by holding this property it is costing the estates of J. N. Cudd and J. J. Cudd approximately $5,000.00 per year and this cannot continue; so that full consideration has been given by the Court to each and every question relating to the necessity for the sale of this property, the time, place, manner, and method of the sale, and the appellant has failed to show where injustice has been done or where any law has been violated. The exception on this point is overruled.

4. The appellant seeks to raise the question by Exceptions 6 and 7 that the Court was without authority to order the receivers to execute a deed to the property to the executor of T. P. Sims, who is now dead, on the ground that such executor is not a party to this proceeding and that the proposal of T. P. Sims to purchase cannot be enforced in this proceeding; nor can the executor be re-

quired to pay all taxes and prior mortgages on the premises. It is a sufficient answer to this question to point out that the appellant is not prejudiced by these provisions of the decree and has no right to raise such issues which do not in any way affect the right of the appellant. In other words, the appellant seeks to present a moot question to the Court, the determination of which is not necessary. Furthermore the executor of the last will and testament of T. P. Sims was directed by the terms of the decree to forthwith pay the taxes and fire insurance premiums on the property; and to pay all past-due interest on the prior mortgage with any curtailment payments due thereon and to take subrogation receipts therefor and to either pay off or assume the mortgage debt held by Provident Mutual Life Insurance Company of Philadelphia, so as to relieve the estate of J. N. Cudd of all liability on this mortgage. The record is silent as to any failure on the part of the executor of the will of T. P. Sims to comply with the decree, and it is assumed that the terms of the decree have been complied with to this extent as far as the executor is concerned, and if so it is clear that J. N. Cudd is relieved of all liability on his prior mortgage, pursuant to the terms of the decree. Furthermore the executor in his fiduciary capacity may be well warranted in invoking the aid of the Court, if necessary, to carry out the terms of the offer of purchase by his testator, in order to protect the assets of the estate of the decedent, T. P. Sims.

5. The last point raised cannot be sustained. This Court is satisfied with the decree of the Circuit Judge which fixes the compensation of the receivers at the same amount that is allowed by law as compensation to the master for the sale of property if and when it is sold at a foreclosure. There is no necessity to take evidence as to the reasonableness of such commissions, but the amount of the commissions is fixed by statutory law, to which the master would be entitled; and the Court merely adopts the same schedule or fee for the receiver which is entirely consistent

with the legal rights of the parties. The exceptions relating to this question are overruled.

It is, therefore, the order of this Court that all of the exceptions be, and hereby are, overruled, and that the appeal be dismissed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER and BONHAM concur.