14710

CUDD *ET AL.* v. HANNON *ET AL.*
DIXON v. CUDD

(198 S. E., 17)

*Mr. Donald Russell,* for appellants,

*Mr. E. W. Johnson,* for respondents,

June 29, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The sole question raised by this appeal is thus stated by the appellant: Are claims arising many years after the appointment of a Receiver in a creditor's suit entitled to payment out of funds and properties passing into the custody of the Court through the filing of such creditor's bill?

The appeal is prosecuted by the Receivers of J. N. Cudd from the decree of the lower Court, wherein certain claims arising out of the last illness and burial of J. N. Cudd were adjudged preferred claims against the funds in the custody of the Receivers and entitled to payment out of such funds.

On December 5, 1931, a general creditor's bill was filed by the Receiver of the First National Bank of Gaffney, suing on behalf of itself and all other general unsecured creditors

of J. N. Cudd, against J. N. Cudd. By this bill the plaintiff sought the appointment or a permanent Receiver for the assets and properties of the debtor to the end that such properties and assets might be taken into the custody of the Court and distributed among the existing creditors of Mr. Cudd as their rights might be fixed and determined. It is admitted that at the time of the filing of the bill Mr. Cudd was insolvent.

On the day the bill was filed, Receivers were appointed, and a consent decree issued, ordering and directing them, "To take possession and custody of all and singular the assets of the said defendant of any character whatever and all the property belonging to the same, real, personal, or mixed."

The issue before us arose from the following facts, as to which there is no dispute:

Some time during the year 1937, the debtor J. N. Cudd, died. Following his death, Dr. A. D. Cudd filed a claim in the sum of $115.00, for services rendered by him covering a period of several weeks during the last illness of Mr. J. N. Cudd. Floyd's Mortuary filed a claim for funeral expenses in the sum of $590.45, and West Oakwood Cemetery filed a claim in the sum of $17.50, for a plot for the burial of Mr. Cudd. None of these claims was incurred at the instance or upon the authorization of the Receivers of Mr. J. N. Cudd.

Shortly prior to the death of Mr. Cudd, an order had been entered in the receivership proceeding allowing a homestead in his favor, in the amount of $1,000.00, and this homestead had been paid to him.

The claimants, Dr. Cudd, Floyd's Mortuary, and West Oakwood Cemetery, filed their claims with the Receivers, and asserted that they were entitled to a preferential status. The Receivers refused payment, and, by an appropriate order, the issue was referred to the Master of Spartanburg County, who, after taking testimony, recommended that the respective claims be allowed as preferred claims in the dis-

tribution of the assets of J. N. Cudd in the hands of the Receiver.

Upon exceptions being taken by the Receivers to the Circuit Court, the report of the Master was confirmed, and the Receivers were ordered and directed to pay these creditors in accordance with the recommendation of the Master.

It appears that when the order was entered, on December 5, 1931, appointing the Receivers, Mr. Cudd had certain outstanding policies of life insurance having a paid-up value of several hundred dollars, in which his estate was named as beneficiary. None of these policies was turned over to the Receivers by Mr. Cudd, but he, instead of so doing, and without the knowledge of the Receivers, changed the beneficiary therein from his estate to his son, J. J. Cudd, and thereafter to his daughter-in-law, Mrs. Blanche Hair Cudd. After the death of Mr. Cudd, in 1937, the Receivers discovered these facts, and they made demand upon Mrs. Cudd to participate in the funds realized from these policies. Their demand to participate was based upon the fact that since the policies had been maintained in force by reason of the paid-up value of the policies existing at the time of the original appointment of the Receivers, the creditors of J. N. Cudd interested in said receivership had certain legal rights in and to the proceeds of such insurance. The contention between Mrs. Cudd and the Receivers was settled, and she paid to the Receivers from the proceeds of the insurance policies an amount in excess of $6,000.00.

It is the contention of the appellant that when a Court of equity appoints a Receiver for an insolvent estate it takes control of the assets and property of the estate for the benefit of all existing creditors at that time, and that the funds in the hands of the Receivers are not liable for the payment of claims incurred by the debtor, or his estate, after such appointment.

When a Court has taken possession of the property and assets of an insolvent debtor for administration and distribution and has appointed a Receiver, the assets of the debtor constitute a trust fund for the payment of his debts. The property of the debtor is deemed to be in the custody of the law, although the title thereto logically remains in the insolvent party, for whose assets the appointment of a Receiver is made. *Hannon v. Mechanics Building & Loan Ass'n,* 177 S. C., 153, 180 S. E., 873, 100 A. L. R., 928; *Peurifoy v. Gamble,* 145 S. C., 1, 142 S. E., 788, 71 A. L. R., 783; *In re American Slicing Machine Co.,* 125 S. C., 214, 118 S. E., 303.

Coming directly to the point at issue, it may be stated as a general proposition of law, that in order for a claim against the fund or property in the hands of a Receiver to be a provable claim, it must be either one which is actionable at the date of the Receiver's appointment, or a direct obligation at the date of such appointment, whether then due or to become due. Conversely, claims which are not in existence at the date of the Receiver's appointment, and which are therefore unascertainable and non-actionable at such date, cannot be proved. 53 C. J., Sec. 386, 230; 23 R. C. L., Sec. 112, 102.

As pointed out by the Court in *Samuels v. Drew & Co.,* 2 Cir., 292 F., 734, 736:

"The reason for this (rule) is, when a Court of equity appoints Receivers for an insolvent estate, it takes control of the assets and property of the estate for the benefit of all existing creditors. A fund is thus created to be administered for all creditors, and to be charged with the obligations in favor of all existing creditors. The Court seeks to preserve the assets and property indicated so no loss may occur or be sustained by existing creditors. The Court does not do this for the protection of prospective creditors. The rights of existing creditors must be *in esse* and established at the time when the fund is created."

It is likewise a rule of general acceptation that one who has no lien, when a Receiver is appointed, cannot, after the appointment, obtain a lien on the property in the Receiver's hands, and thereby gain a preference over other creditors entitled to share equitably in the distribution of the estate. *Regenstein v. Pearlstein,* 30 S. C., 192, 8 S. E., 850; *Clinkscales v. Pendleton Mfg. Co.,* 9 S. C., 318.

In keeping with these well-recognized principles, it has been held that one over whose property a Receiver has been appointed, has no authority thereafter to subject it to any legal liability in the hands of the Receiver. *In re. Muir,* D. C., 212 F., 495, 501; *McKinnon-Young Co. v. Stockton,* 53 Fla., 734, 44 So., 237; *Barnes v. Newcomb,* 89 N. Y., 108.

Illustrative of the same principle, we have held that no interest may be added to unsecured claims against such receivership subsequent to the appointment of the Receiver. *Ex parte Hernlen,* 156 S. C., 181, 153 S. E., 133, 69 A. L. R., 443.

The report of the Master, confirmed by the Circuit Court, cites the cases of *In re. American Slicing Machine Co.,* and *Hannon v. Mechanics Building & Loan Ass'n, supra,* as supporting his conclusion that the claims filed in the case at bar were proper charges against the funds in the hands of the Receivers. We think the holding in these cases has been misapprehended. In the first case referred to, the claim was in existence at the time of the appointment of the Receiver, and the contest was whether the claimant was entitled to recover the possession of a machine covered by an unrecorded chattel mortgage, or to a preferred claim out of the proceeds of sale. The Court there said (page 304) :

"At the time of the appointment of the Receiver in the case at bar, the machine covered by the claimant's reservation of title contract, or chattel mortgage, passed from the possession of the insolvent corporation to that of the Receiver, incumbered exactly as it was before.  *   *   *

"The Court in the administration of the insolvent estate is bound to recognize and protect, not only the rights of the claimant as a mortgagee of the machine as against the Receiver, but the rights of creditors as they existed at the time of the appointment of the Receiver, as against the mortgagee."

In the second case cited by the Master (*Hannon v. Mechanics Building & Loan Ass'n, supra*), the liability was one in existence prior to the date of the appointment of the Receivers, and not subsequently incurred. An examination of that case will show that it has no applicability to the facts of the case now before us.

We are likewise unable to agree with the Master that the fact of the insurance money coming into the hands of the Receivers after the death of J. N. Cudd would add any strength to the argument that the claims at bar be given a preference. The insurance policies from which this money was derived were in existence at the time the Receivers were appointed, and were payable to the estate of Mr. Cudd. These policies had a cash surrender value of several hundred dollars, and in contemplation of law such cash surrender value passed to the receivership as an existing asset of Mr. Cudd. The fact that Mr. Cudd failed to deliver the insurance policies to the Receivers cannot alter the situation or affect the question. The cash surrender value was used and consumed in the payment of the premiums on the policies accruing thereon up to the date of Mr. Cudd's death. This valuable asset constituted a fund in Court as completely as if in the hands of the Receivers, and as such it belonged to the creditors. And although the avails received by the Receivers from the policies did not come into their hands until after the death of Mr. Cudd, such possession when acquired would logically relate back to the date of the receivership appointment, when control was assumed by the Receivers over the debtor's assets.

Nor can we concur in the decree of the lower Court, confirming the Master's report, that these claimants are entitled to a preference under Section 8995, 1932 Code, wherein is fixed the order of distribution of the assets of intestate's estate.

If, as we have shown, Mr. Cudd, after the appointment of the Receivers, had no authority to subject his property in the hands of the Receivers to any legal liability, it is difficult to perceive how his death could have created any such liability. The claims of the respondents came into being long after the Receivers were appointed. The assets and property of the debtor were taken over by the Court in favor of the existing creditors of the insolvent as of that date, and the rights of all creditors of the debtor were fixed and determined as of that date. The receivership proceeding operated to create a trust fund, to be administered and distributed for the existing creditors, and did not look to prospective creditors.

The record shows that the general unsecured claims against the estate of Mr. Cudd at the time of the receivership appointment aggregated approximately $600,000-.00. Upon these claims a dividend of 12% has already been paid, and a final dividend of 3% more is anticipated; thus making a total payment to creditors of $90,000.00. Of course, if there were funds in the hands of the Receivers in excess of the claims, such excess would be returned to the estate of J. N. Cudd, against which the claimants might have a preferred claim. Likewise, as against any assets and property accumulated by Mr. Cudd, if any, between the date of the appointment of the Receivers and the date of his death, the respondents would be entitled to the priority given them under the statute.

Judgment reversed.

MESSRS. JUSTICES STABLER, BONHAM and BAKER, and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.

MR. JUSTICE CARTER did not participate on account of illness.