[Civ. No. 12418. Fourth Dist., Div. Two. Nov. 26, 1973.]

THE PEOPLE, Plaintiff, v.
RIVERSIDE UNIVERSITY et al., Defendants and Respondents;
LeMOYNE S. BADGER, as Receiver, etc., Petitioner and Appellant.

## COUNSEL

LeMoyne S. Badger, in pro. per., and Badger & Biddle for Petitioner and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill and Joseph Garcia, Deputy Attorneys General, as Amici Curiae on behalf of Petitioner and Appellant.

Baltaxe & Levin and George Baltaxe for Defendants and Respondents.

## OPINION

**TAMURA, J.**—Appellant (LeMoyne S. Badger) was appointed as receiver in an action brought by the People against Riverside University and certain of its officers to enjoin them from engaging in unlawful and fraudulent business practices and to secure compliance with terms of the charitable trust with which its assets were impressed. The receiver appeals from an order fixing his fees and granting him a conditional discharge, the condition being that defendants have not, within 90 days, commenced proceedings against him (either in the present action or in a separate suit) to recover damages for sales of personal property at less than fair market value. The receiver urges that the court erred in failing to give him an unqualified discharge and abused its discretion in failing to fix his fees in the amount requested.

The following is a background of the events leading to the present appeal. We shall refer to the pertinent facts in greater detail in our ensuing discussion of the particular legal issues to which they relate.

On May 5, 1971, under the authority vested in him by Corporations Code section 9505,[1] the Attorney General filed the underlying action against Riverside University and three of its officers (George Holgate, president; Charles Ashman, dean of the law school; and Ronald D. Barrington, dean of admissions) charging, inter alia, that the university is a nonprofit corporation organized under the laws of the State of California engaged in the business of operating an educational institution; defendants, in violation of state laws and public policy, have been making false and misleading representations in order to induce members of the public to enroll in the university; defendants have engaged in a course of conduct in violation of the laws of the United States by misappropriating federally insured student loan funds and grants; defendants have engaged in unfair and fraudulent business practices in violation of Civil Code section 3369 (unfair competition). The complaint sought an injunction, exemplary damages, and other equitable relief.

On May 18, 1971, People filed an ex parte application for the appointment of Mr. Badger, an attorney at law, as receiver. The application was

---

[1]Corporations Code section 9505 provides: "A nonprofit corporation which holds property subject to any public or charitable trust is subject at all times to examination by the Attorney General, on behalf of the State, to ascertain the condition of its affairs and to what extent, if at all, it may fail to comply with trusts which it has assumed or may depart from the general purposes for which it is formed. In case of any such failure or departure the Attorney General shall institute, in the name of the State, the proceedings necessary to correct the noncompliance or departure."

supported by the declaration of a deputy attorney general stating that on May 14, defendant Holgate disseminated information in local press media and otherwise to the effect the university would terminate all classes on May 21 even though the current academic quarter was not scheduled to end until approximately June 30; defendant Holgate informed declarant that all administrative staff of the university had resigned on May 13; if classes were not continued until the end of the current quarter, enrolled students would suffer irreparable injury in that they would have expended countless hours of study for which they would receive no credit, law students would be ineligible to take the first bar examination for unaccredited law schools, and many would not receive degrees to which they would be entitled; closing classes before the end of the quarter would result in termination of accreditation and approvals theretofore issued by the State Superintendent of Public Institutions and other state and federal agencies; the university was without effective leadership and its assets and property were without adequate safeguards; personal and real property dedicated to the university were being used by defendant Holgate for his own personal benefit.

On May 18, 1971, the court, over defendants' objection, appointed Mr. Badger as receiver.[2] The receiver was authorized and instructed to take possession of and preserve and maintain the property, assets and records of the university; to continue the university in operation by employing such persons as may be necessary to conduct regular courses of instruction and to pay for their services at ordinary and usual rates from funds that shall come into his possession as receiver; "to do all those things and to incur the risks and obligations ordinarily incurred by owners, managers, and operators of similar educational institutions, as such receiver, and no such risk or obligations so incurred shall be the personal risk or obligation of the receiver, but a risk and obligation of the receivership estate"; to "exert every means possible to ensure that all students currently enrolled in Riverside University have the opportunity to complete the current quarter ending about June 30, 1971."

On June 1, 1971, the court authorized the receiver to continue operating the university beyond June 30 and instructed him to file a report on or before July 15 concerning the operation of the school for the period ending June 30 and to further report on or before August 30 whether or not the school should be operated beyond September 30.

---

[2]The appointment was made following conference in chambers attended by the deputy attorney general, attorney for defendants, and Mr. Holgate. The ex parte appointment was confirmed on May 25, 1971.

In July 1971 defendants filed a motion to terminate the receivership and the receiver filed his interim report and requested further instructions. Both matters were heard concurrently. The court found that the necessity for receivership had essentially ceased; "the Receiver has fully performed his duties in regard thereto"; and the receivership should terminate as of August 30, 1971. In the interim, however, the receiver was authorized and instructed to conduct a summer quarter of the law school.[3]

On August 30 the receiver filed his final account and petitioned for fees and discharge. His itemized statement for services rendered totaled 237½ hours for which he requested compensation at $50 per hour for a total sum of $11,875. Defendants filed opposition to the request for fees and discharge. They alleged the receiver had sold assets of the university without complying with Code of Civil Procedure sections 568.5, 692, and 694; that the prices received were "grossly low and disproportionate" to the value of the items sold. They objected to the requested fees as being excessive.

The court initially took the matters under submission but later vacated the order of submission and ordered the receiver to file a petition for authority to sell property, for waiver of compliance with Code of Civil Procedure section 692, and for confirmation of the sales. The receiver thereupon filed a petition in accordance with the court's instruction alleging it was necessary to sell certain unneeded furniture and equipment in order to continue the school in operation as instructed and that all of the proceeds (approximately $18,000) were used to meet current operating expenses. He filed a list of the properties sold showing the price received for each item, together with declarations stating that an investigation had been made of the value of the equipment and furniture sold and that they were all sold at fair market value. Defendants filed further objections alleging that the items were sold at less than fair market value. Mr. Holgate filed a declaration to which he appended the receiver's list of items sold and indicated opposite each item the price he (Holgate) thought the article should have brought at a "distress sale" and its "replacement value."

Following hearing, the court made its order on the matters before it as follows:

It denied the petition for authority to sell the property and for waiver of compliance with Code of Civil Procedure section 692 on the ground sales had already taken place but nevertheless confirmed the sales on the ground "that said Receiver used the proceeds from sale in furtherance of

---

[3]The tuition which law students had paid in advance covered payment for the summer quarter.

the purposes for which he was appointed, and further, that there was evidence that the property was sold at fair market value, and further that said Receiver presently retains cash in the amount of $3,109.07, thereby leaving insufficient proceeds to return to the buyers of the personal property."

The court ordered that approval of the receiver's account and his discharge be conditioned upon defendants not having commenced "proceedings against [the receiver] and/or his surety in this action or by separate action alleging damages resulting in the sale of personal property of Riverside University by Receiver at less than fair market value."

The receiver was awarded additional compensation of $3,000 which, added to the $4,000 previously paid, made his total compensation $7,000.

The receiver appeals from the order contending: (1) He should have been granted an unqualified discharge and (2) denial of the requested fees constituted an abuse of discretion. By leave of court the Attorney General has filed a brief amicus curiae in support of appellant's position.

I

*The Qualified Discharge*

It is apparent from the proceedings below that the trial court was under the impression that because the receiver had sold property without complying with Code of Civil Procedure section 568.5, it was powerless to approve the receiver's final account or grant him a complete discharge. For the reasons which follow, it is our conclusion that that assumption was erroneous.

Section 568.5[4] provides: "A receiver may, pursuant to an order of the court, sell real or personal property in his possession as such receiver, upon the notice and in the manner prescribed by law for the sale of such property under execution. The sale shall not be final until confirmed by the court. Sales made pursuant to this section shall not be subject to redemption." Section 692, subdivision 2, prescribes the time and manner of giving notice of sale of personal property on execution.[5]

---

[4]All section references are to the Code of Civil Procedure unless otherwise indicated.

[5]Code of Civil Procedure section 692 provides in relevant part: "Before the sale of property on execution, notice thereof must be given as follows: . . . 2. In case of other personal property: by posting a similar notice in three public places in the city where the property is to be sold, if the property is to be sold in a city, or, if not, then in three public places in the judicial district in which the property is to be sold, for not less than 10 days and also, not less than 10 days prior to the sale, by mailing a

Insofar as authority to sell is concerned, the receiver contends the order of appointment impliedly authorized him to sell unneeded furniture and equipment in order to provide funds for current operating expenses. We agree.

This was not an ordinary receivership ancillary to proceedings for the dissolution or liquidation of a private corporation or a receivership in aid of execution on a judgment. The present action was one brought by the Attorney General in the exercise of his historical right and duty, recognized by statute, to supervise and enforce charitable trusts and to maintain such actions as may be appropriate to protect the public interest. (Corp. Code, § 9505; *Brown* v. *Memorial Nat. Home Foundation,* 162 Cal.App. 2d 513, 535-537 [329 P.2d 118, 75 A.L.R.2d 427]; Bogert, Trusts & Trustees (2d ed.) § 411.) The asset of the university was impressed with an educational trust and as such the public had a right to its continued use for the purpose for which it was dedicated. ■ In an ordinary receivership over private business concerns, a receiver, in the absence of specific authority, has only very limited powers and in doubtful or important matters must apply to the court for instruction and advice. (*Northern Finance Corporation* v. *Byrnes* (8th Cir.) 5 F.2d 11, 13.) However, when a receiver is appointed to take possession of and operate a quasi-public corporation obligated to render continued service to the public (such as a public utility), he may in the first instance be vested with broad authority to "do anything the corporation might have done to make the most out of the assets in his hands." (*Pacific Railway Co.* v. *Wade,* 91 Cal. 449, 455 [27 P. 768]. See *Illinois T. & S. Bank* v. *Pac. Ry. Co.,* 115 Cal. 285, 295 [47 P. 68]; *Byrnes* v. *Missouri Nat. Bank* (8th Cir.) 7 F.2d 978, 979; *Northern Finance Corporation* v. *Byrnes, supra,* 5 F.2d 11, 13.)

■ In the case at bench, it was imperative that the university continue in operation in order to protect the public, particularly the enrolled students. Mr. Badger was vested with broad powers. He was authorized and instructed to "exert every means possible to ensure that all students currently enrolled" have the opportunity to complete the current quarter and to that end was empowered "to do all those things and to incur the risks and obligations ordinarily incurred by owners, managers and operators of similar educational institutions, as such receiver, and no such risk or obligation so incurred shall be the personal risk or obligation of the receiver, but a risk and obligation of the receivership estate."

notice of the time and place of the sale to the judgment debtor at his business or residence address last known to the judgment creditor or his attorney or delivering such notice to the judgment debtor. It shall be the duty of the party delivering an execution to an officer for levy to furnish the information required by such levying officer to comply with the provisions of this subdivision."

The circumstances leading to the sale of the assets of the university are described by Mr. Badger in his declaration filed below as follows: Upon embarking upon his duties, he found that because of the events leading to his appointment, the staff, faculty and students were completely demoralized and the university had virtually ceased to function. He discovered that the school depended primarily upon the federally insured student loan program to finance its operation. However, he found that the program was in serious jeopardy. The federal regional administrator of the program informed the receiver that the university may be indebted to the government to the extent of $450,000 to $500,000 for improper use of federal funds. The receiver found that "trade accounts" payable amounted to approximately $100,000 and that while the books showed substantial accounts receivable, those amounts were greatly inflated. In addition to the financial chaos, loss of accreditation was imminently threatened.

Within four days after taking the oath of office, the receiver had to expend all of the limited available cash in order to meet the faculty and staff payroll due on May 25. In order to continue the school in operation, he had to reestablish the federal student loan program. To accomplish this, it was necessary to interview all students to determine their eligibility for federal loans and to reprocess all student loan applications. Although it was anticipated that the loan applications could be processed in time to enable the receiver to meet the next payroll, the chaotic condition of school records resulted in further delays and expenses. To meet the June 10 payroll, the receiver found it necessary to sell certain items of unneeded furniture and equipment, reduce the number of faculty and staff members, and forego payment of other operating expenses such as rent and utilities. The receiver encountered similar financial crises at each subsequent payroll period and was forced to sell additional furniture and equipment in order to continue the school in operation to the end of the quarter.

The broad authorization to do all things an owner, operator or manager of a similar educational institution can do necessarily encompassed, in the circumstances confronting the receiver, the power to sell unneeded personalty to provide funds to carry out the court's mandate to keep the school in operation. As a matter of fact, the supplemental instruction of August 5, 1971, directing the receiver to conduct a summer quarter of the law school indicates that the court assumed that its original order of appointment authorized sale of assets to provide needed operating expenses. It provided that the receiver is not authorized to sell assets of the university "except for the purpose of obtaining cash to pay current operating expenses."

In any event, even assuming that the original order was not broad enough

to authorize the sales, the court ratified the action of the receiver by confirming the sales.

■ In a proper case, an action of a receiver in equity, though taken without prior court authorization, may be ratified by subsequent court approval. (*Rochat* v. *Gee,* 137 Cal. 497, 500 [70 P. 478]; *In re Moore,* 88 Cal. 1, 3 [25 P. 915]; *Maggiora* v. *Palo Alto Inn, Inc.,* 249 Cal.App.2d 706, 713 [57 Cal.Rptr. 787].) In *Maggiora, supra,* the receiver employed counsel before making an application for consent to do so as required by the Rules of Court. In rejecting the contention that the employment was unauthorized, the court declared: "A receiver may act without prior approval of court and have his acts subsequently ratified (*Rochat* v. *Gee,* 137 Cal. 497 [70 P. 478]). This rule is one of common sense necessitated by the fact that often, as here, a receiver is required to act in an emergency where no prior approval is possible." (249 Cal.App.2d 706, 713.) Where a receiver has acted in good faith and when what he has done has been beneficial to the interested parties, his acts, though taken without court authorization, should be subsequently approved. (*Sprague, Warner & Co.* v. *Iowa Mercantile Co.* 186 Iowa 488 [172 N.W. 637, 639].)

■ With reference to a court's power to confirm a receiver's sale, the controlling considerations have been summarized as follows in 2 Clark, Law of Receivers (3d ed. 1959) section 517: "Generally speaking if no good reason appears for refusing to confirm a receiver's sale, such as chilling of bids or other misconduct or gross inadequacy of price, the sale should be confirmed. . . . The order of confirmation gives the judicial sanction of the court, and when made, it relates back to the time of sale and cures all defects and irregularities except those founded in want of jurisdiction of the persons or the subject matter, or in fraud. The court has power to confirm the sale although the terms of the decree of sale may not have been strictly followed. The matter of confirmation rests upon the sound discretion of the appointing court to be judicially exercised in view of all the surrounding facts and circumstances and in the interest of fairness, justice and rights of the respective parties." (See also *Wills* v. *Chandler* (D. Neb.) 2 F. 273, 275.) Where there is no evidence of fraud, unfairness or oppression in the sale, the court has wide discretion in confirming a judicial sale. (*Lesser & Son* v. *Seymour,* 35 Cal.2d 494, 503 [218 P.2d 536].)

In the present case the court properly confirmed the sales, thereby curing any lack of prior authorization to sell.

However, since the sales were admittedly not made in the manner prescribed by law for sales under execution, the court apparently felt it was

powerless to approve the receiver's account and to give him an unqualified discharge. Implicit in the court's order making the discharge conditional is the assumption that the receiver would be liable for the difference between the price received and the "fair market value" of the items sold.[6]

It is our conclusion that the receiver was entitled to an approval of his account and final discharge, notwithstanding the fact the sales were not made in the manner provided for sales on execution.

■ In the absence of a statute otherwise providing, the court may authorize a receiver to sell property in his hands at either a private or public sale. (*Northland Pine Co.* v. *Northern Insulating Co.* 145 Minn. 395 [177 N.W. 635, 636]; *United States Fidelity & Guaranty Co.* v. *McCain*, 136 Miss. 300 [101 So. 197, 199]; 2 Clark, Law of Receivers, *supra*, § 591.) ■ The question before us is whether section 568.5 precludes a court from confirming a sale where the mode in which it was made was different than that provided for execution sales.

From the analysis which follows, it is our conclusion that a court may prescribe or ratify unconditionally a different mode of sale than that provided for execution sales.

A receiver's sale is a judicial sale as distinguished from a sale under execution. (*Peebler* v. *Olds*, 56 Cal.App.2d 13, 15 [132 P.2d 236].) In execution sales, the sheriff or marshal acts as a ministerial officer and not as an officer of the court; "the court is not the vendor" and the officer's authority "rests in the law and on the writ and does not as in judicial sales emanate from the court." (2 Clark, Law of Receivers, *supra*, § 484.) A receiver, on the other hand, is an agent of the court and the property in his hands is really under the control and continuous supervision of the court. (*Lesser & Son* v. *Seymour*, *supra*, 35 Cal.2d 494, 499.) Consequently, unless regulated by statute, the court has full power to order the receiver to dispose of property in such a manner as the court may deem to be for the best interest of the parties concerned and the advice of the receiver and his opinion in regard to the value of the property, the manner, time and place of its disposition are entitled to great respect and weight. (*Hannon* v. *Mechanics Building & Loan Ass'n*, 177 S.C. 153 [180 S.E. 873, 876, 100 A.L.R. 928]. See also *Chapman* v. *Schiller*, 95 Utah 514

---

[6]Where a loss has been sustained through the receiver's misconduct in connection with a sale and it is impracticable to set aside the sale, the proper procedure would be to confirm the sale and surcharge the receiver rather than to grant a conditional discharge as was done in the instant case. (See *Phelan* v. *Middle States Oil Corporation* (2d Cir.) 154 F.2d 978, 991; *Pangburn* v. *American Vault, Safe & Lock Co.* 205 Pa. 93 [54 A. 508, 510].)

[83 P.2d 249, 251, 120 A.L.R. 906]; *Yakima Finance Corporation* v. *Thompson,* 171 Wash. 309 [17 P.2d 908, 910]; 66 Am.Jur.2d § 403.)

We have found no case passing upon the precise question whether a court may authorize a receiver to sell property in a manner other than that prescribed by section 568.5. However, although the point was not in issue, there are reported decisions where a court has authorized a receiver to sell property in a manner other than that provided for execution sales.

In *Lesser & Son* v. *Seymour, supra,* 35 Cal.2d 494, a receiver in a partnership dissolution action was authorized to sell the partnership assets by soliciting offers and petitioning the court for confirmation. The confirmation was to be subject to bidding and sale to the highest bidder in open court, with the further proviso that if the property was not so sold within a specified date, the receiver was to sell upon notice and in the manner provided for the sale of such property on execution. The receiver obtained an offer and petitioned for confirmation. At the confirmation hearing, plaintiffs in the action submitted a higher bid and the assets were sold to them. Defendants appealed, contending the sale was invalid because it occurred after the date specified in the original order of sale and that therefore the sale should have been made as in the manner provided for execution sales. In rejecting the contention, the court referred to the broad power of a court to determine the manner in which property should be sold, stating: "We are satisfied that a court in an equity proceeding has the power to change the manner of sale of property in its custody by a receiver appointed by it from that previously prescribed by it in the order directing the sale, and in that connection may make the sale itself although the prior order called for it to be made by the receiver. In effect, the directions in the order of sale with regard to the manner in which it should be made, are merely instructions to the receiver—his procedural directions. They do not go to the substantive rights of the parties. Of course they are binding upon the receiver, and while, for some purposes, they may be final, yet the main function of the court is to manage or dispose of the estate in the best manner possible and for the best interest of the parties concerned. To effectually perform that duty necessarily requires some flexibility and continuity of jurisdiction in giving instructions to the receiver as to the manner in which the property should be sold to meet exigencies as they may arise. [¶] The foregoing comments follow from the principles applicable to judicial and receivership sales in equity proceedings. The receiver is a mere agent and the property in his hands is really under the control and continuous supervision of the court. [Citations.]" (*Lesser & Son* v. *Seymour, supra,* 35 Cal.2d 494, 499.)

In *MacMorris Sales Corp.* v. *Kozak,* 249 Cal.App.2d 998 [58 Cal.Rptr. 92], a receiver was appointed to take over and operate a used car sales business operated by plaintiff corporation. On petition for instructions, the receiver was instructed to liquidate the automobiles on hand "in a manner designed to realize the maximum sum therefor." The receiver later reported that all cars had been sold for the best price obtainable, some by auction and others by private sale. The plaintiff corporation objected to the receiver's final report and account and petition for discharge on several grounds, including the assertion that automobiles had been sold for less than their wholesale value without explanation. Following hearing, the trial court approved the account. While the mode of sale was apparently not in issue, in affirming the order the court disposed of the contention that the price received was inadequate by stating: "Appellants' principal grievance appears to be that the automobiles brought too small a price. But there is no evidence that the receiver could have obtained a better price." (*MacMorris Sales Corp.* v. *Kozak, supra,* 249 Cal.App.2d 998, 1004.)

In the absence of more explicit language, we cannot read section 568.5 as a restriction upon the inherent equitable power of the court to prescribe the manner in which a receiver may sell property. To effectively discharge its responsibility of managing for the best interest of the parties concerned the assets placed in the hands of a receiver, the court must, as stated in *Lesser, supra,* necessarily maintain a degree of flexibility with respect to the time and manner in which property should be sold to meet exigencies as they arise. (*Lesser & Son* v. *Seymour, supra,* 35 Cal.2d 494, 499.) This is particularly true of the type of receivership with which we are concerned. We interpret section 568.5 to mean that unless the court prescribes a different mode of sale, a receiver, when authorized, must sell property in the manner provided for sales on execution.

In the case at bench, therefore, the court could have authorized the receiver to sell the unneeded furniture and equipment at private sale, at the best price attainable under the circumstances, in order to provide funds for the continued operation of the school. Having the power to authorize private sales in the first instance, the court possessed the power to approve sales so made without prior authorization. (*Rochat* v. *Gee, supra,* 137 Cal. 497, 500; *In re Moore, supra,* 88 Cal. 1, 3; *Maggiora* v. *Palo Alto Inn, Inc., supra,* 249 Cal.App.2d 706, 713.)

 The court confirmed the sales because, as stated in its order, the proceeds were used in furtherance of the purposes of the receivership and "there was evidence that the property was sold at fair market value." However, it conditioned its approval of the final account and the discharge

on the failure of defendants to institute proceedings against the receiver to recover damages for the sales of assets at "less than fair market value." On the evidence presented, the court should have approved the receiver's account and granted him an unqualified discharge.

The evidence revealed, and the court impliedly found, that in making the sales the receiver acted in good faith and that the price received was fair under the exigencies of the situation. There was substantial evidence to support those findings. The receiver's verified petition containing his detailed account and report, supported by additional declarations, constituted such evidence. (*MacMorris Sales Corp.* v. *Kozak, supra,* 249 Cal. App.2d 998, 1003.) In view of the court's findings, the receiver should have been required to account only for the price received and not for the "fair market value" of the properties sold. (See *MacMorris Sales Corp.* v. *Kozak, supra,* 249 Cal.App.2d 998, 1004; 75 C.J.S., Receivers, § 378, p. 1044.)
■ As aptly stated in 66 American Jurisprudence 2d at page 172: "The examination of the account of a receiver is conducted in a spirit of equity, assuming the receiver to be honest until the contrary appears, and from the standpoint of benefit or injury to the estate rather than of strict and technical adherence to form." The evidence reveals that it was only through the receiver's heroic efforts that he was able to keep the university in operation through the academic quarter. The receiver adduced evidence that before making the sales he ascertained the value of the items by contacting firms in the area dealing in such merchandise and that the prices received constituted fair market value and, in most instances, were as much or more than what the university had initially paid. There was uncontradicted evidence that much of the furniture and equipment had been obtained by the university from "State Surplus." Mr. Holgate's bare assertions, without foundational support, that the prices received were substantially less than replacement value or what could have been obtained at a distress sale was not a valid basis for refusing to approve the account. (See *MacMorris Sales Corp.* v. *Kozak, supra,* 249 Cal.App.2d 998, 1004.) Even a well founded opinion that property would on resale bring a much higher price has been held to be an insufficient ground for setting aside a judicial sale. (*Fidelity Trust & Safety Vault Co.* v. *Mobile St. Ry. Co.,* 54 F. 26, 27-28.) The price received must be so grossly inadequate as to excite the suspicion of the court or the circumstances surrounding the sale be such as would indicate unfairness because of accident, fraud, or other misconduct. (2 Clark, Law of Receivers, *supra,* § 517.) In the present case, there was no showing of fraud, unfairness or misconduct in connection with the sales. Justice and equity called for an unqualified approval of the account and a final discharge rather than a conditional order which simply constituted an open invitation to a suit against the receiver.

Defendants rely in part on section 693 which provides: "An officer selling without the notice prescribed by the last section forfeits one hundred dollars ($100) to the aggrieved party, in addition to his actual damages. . . ." Section 693 is inapplicable. Section 568.5 refers to "the manner" prescribed by law for the sale of property under execution; it does not incorporate, by reference or otherwise, the provisions of section 693. Furthermore, when the court prescribes or ratifies a different mode of sale, section 693 obviously would not govern.

## II

### *Receiver's Fees*

■ The receiver claimed compensation for 237½ hours of service at his professional rate of $50 per hour or a total of $11,875, with credit for $4,000 previously paid. The court awarded a total sum of $7,000. The receiver contends the court abused its discretion in denying him compensation in the full amount requested. The Attorney General urges that Mr. Badger's claim should be honored because it was necessary to have a receiver with legal training in order to carry out the mandate of Corporations Code section 9505.

■ It is settled that fees awarded to receivers are in the sound discretion of the trial court and in the absence of a clear showing of an abuse of discretion, a reviewing court is not justified in setting aside an order fixing fees. (*MacMorris Sales Corp.* v. *Kozak, supra,* 249 Cal.App.2d 998, 1005; *Venza* v. *Venza,* 101 Cal.App.2d 678, 680 [226 P.2d 60]; *Kan* v. *Tsang,* 90 Cal.App.2d 538, 541 [203 P.2d 86]; 2 Witkin, Cal. Procedure (2d ed. 1970) p. 1646.) ■ In the instant case we cannot say that the amount fixed by the court constituted a clear abuse of discretion. There is nothing in the record to show that the court failed to take into account the professional status of the receiver or the nature and extent of the services rendered. In so concluding, however, we do not intend to preclude the receiver from seeking additional fees for compensable services rendered by him subsquent to the date of the order from which he appeals. ■ In this connection it is to be noted that the cost of defending against an unfounded challenge to a receiver's account is regarded as a necessary expense incurred in the course of his official duties for which he is entitled to reimbursement out of the estate. (*MacMorris Sales Corp.* v. *Kozak, supra,* 249 Cal.App.2d 998, 1005.)

Those portions of the "ORDER RE PETITION FOR FEES, PETITION FOR DISCHARGE, PETITION FOR AUTHORITY TO SELL PROPERTY, PETITION FOR WAIVER OF COMPLIANCE WITH SECTION 692.2 CCP, AND PETITION FOR

CONFIRMATION OF SALE" filed March 31, 1972, conditioning approval of the receiver's account and his discharge on the failure of defendants to commence proceedings within 90 days against the receiver or his surety seeking alleged damages resulting from the sale of personal property at less than the fair market value are reversed with directions to approve the receiver's final account and grant the receiver and his surety an unconditional discharge.

That portion of the order fixing the receiver's fees is affirmed without prejudice, however, to an award of additional fees for compensable services rendered subsequent to the date of the order.

Gardner, P. J., and Gabbert, J., concurred.