[Civ. No. 23290.   First Dist., Div. Two.   Mar. 27, 1967.]

MICHAEL MAGGIORA et al., Plaintiffs and Respondents, **v.** PALO ALTO INN, INC., Defendant and Appellant; LOUIS GANAPOLER, as Receiver, etc., Respondent.

Rosenthal & Green, Robert C. Forst and Arnold D. Kahn for Defendant and Appellant.

Hession, Robb, Creedon, Hamlin & Kelly, Donald F. Farbstein and Francis J. Stillman for Plaintiffs and Respondents.

Hersh & Hadfield and James D. Hadfield for Respondent.

TAYLOR, J.—Defendant appeals from those portions of an order dated June 30, 1965,[1] affirming the ex parte appointment of a receiver, and ordering defendant to pay the expenses and fees of the receiver, as well as the counsel fees incurred by the receiver and plaintiffs.

In 1959, plaintiffs, Michael Maggiora, Gregory Maggiora, Angela Andreotti, and The Maggiora Corporation, entered into a 99-year lease providing for defendant's construction and subsequent operation of a 200-room hotel and convention facility on plaintiffs' real property in Palo Alto. The minimum monthly rental of $3,000 and the percentage rental of certain gross receipts were payable at plaintiffs' residence in Napa County. The lease provided for the making of various reports and accountings to plaintiffs. In order to assist defendant with the financing and construction, plaintiffs agreed that defendant could subordinate the entire demised premises, including the land, to the construction loans.

Plaintiffs, as co-trustors with defendant, executed chattel mortgages and two deeds of trust totaling $2,800,000. Under the terms of these documents, plaintiffs covenanted to secure the payment of defendant's $1,000,000 promissory note. The deeds of trust assigned the rents to the holders of the first and second deeds of trust in the event of a default and also provided for foreclosure and sale. The second deed of trust provided for the passage of possession to the beneficiary on default, prior to foreclosure.

By November 1964 the hotel had been completed and in operation for a period of about two years, but was in severe financial difficulties. The insolvent defendant commenced a series of negotiations with some of its creditors to explore the possibility of continuing in business pursuant to chapter XI of the bankruptcy act (11 U.S.C.A. § 701 et seq.). Subsequently, defendant submitted to plaintiffs a proposed amend-

---

[1] All issues are properly raised on the appeal from the order of June 30, 1965, which merged all previous interim orders (Code Civ. Proc., § 963). The appeals from the interim orders should, therefore, be dismissed.

ment of the lease on the signing of which $245,000 would immediately have become available to defendant for its continued operations.

On November 19, 1964, plaintiffs filed their complaint in this action for an accounting, specific performance, moneys had and received, account stated, declaratory relief, and the appointment of a receiver. The latter request was supported by the declarations of plaintiffs' attorneys indicating: that defendant owed several months of both minimum and percentage rents totaling approximately $41,000 and that defendant had failed to perform numerous other covenants of the lease; that the total capital of defendant was $500, while its liabilities exceeded its assets by approximately $2,000,000, not including another $2,000,000 of contingent claims; that the general manager of defendant had stated within the past few days that unless the lease amendment was signed and the money made available, the business would have to be closed on Friday, November 20; and that on November 19, 1964, defendant's attorneys indicated that if plaintiffs did not sign the proposed lease amendment "the business would go down the tubes on Friday, November 20, 1964," and that a chapter XI bankruptcy proceeding would be filed on the following Monday.

On November 19, 1964, the court entered its ex parte order appointing the receiver, who immediately took possession of all the property of defendant. After several days of extensive hearings on the petition for confirmation, the court found that defendant, through its agents, represented to plaintiffs that it intended to close the doors of the hotel on November 20, 1964; that these statements were made to secure a bargaining advantage over plaintiffs and induce them to modify the provisions of the lease; that plaintiffs were justified in believing and relying on the representations; that if the business had been closed, there would have been loss and damage of a substantial nature; that because of the community of interest between the parties, the ex parte appointment of the receiver on November 19 was valid and justified on the representations made by defendant's attorneys, most of which were borne out by tape recordings;[2] that the appointment was reasonable and

[2]The recordings were of conversations between plaintiffs' attorney and two of defendant's attorneys and were admitted into evidence after the overruling of defendant's objections. The tapes indicated that by the end of the second year, the hotel was $250,000 in debt and could not meet its payroll; that on November 19, its bank account was overdrawn and that unless the money became available, the operation would fold auto-

necessary to protect and maintain the business and that such appointment accomplished a benefit to the parties and all other persons interested in the business.

The court further found that the confirmation of the appointment of the receiver would compel defendant to incur extra expenses duplicating certain existing expenses and might prevent the corporation from continuing to operate; and that upon defendant's stipulation to a mandatory injunction that it would not voluntarily terminate or close the business and would perform the covenants of the lease relating to the payment of rent and accounting, the interests of all parties would best be served by a termination of the receivership as of December 2, 1964. Accordingly, the court entered its order of June 30, 1965, affirming the ex parte appointment of the receiver but denying the confirmation of the appointment and directing defendant to pay the amount of $2,010.50, expenses and fees incurred by the receiver, as well as his counsel fees of $3,801.58, and the sum of $1,257.51 for counsel fees and costs incurred by plaintiffs in procuring the appointment of the receiver.

Defendant's major contention on appeal is that the order appointing the ex parte receiver failed to meet any of the jurisdictional requirements of section 564 of the Code of Civil Procedure. Subdivision 1 of that statute, so far as pertinent, authorized the appointment of a receiver "In an action . . . between partners or others jointly owning or interested in any property or fund, on the application of . . . any party whose right to or interest in the property or funds, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured."

The appointment of a receiver rests largely in the discretion of the trial court. If it appears that the party seeking the appointment has at least a probable right or interest in the property sought to be placed in receivership and that the property is in danger of destruction, removal or misappropriation, the appointment of a receiver will not be disturbed on appeal (*Sachs* v. *Killeen*, 165 Cal.App.2d 205,

matically by Monday or Tuesday; that defendant's stockholders ''might be much better off to allow the foreclosure to go ahead and squeeze out the Maggioras, because *without the Maggioras' amendment the place can not pay out because it can never be financed. No one will do it.* We tried to sell this place and everything goes along well, including a decent price and a possibility of one that would at least enable everybody to get off the paper, no profit, because the real problem is the construction cost, you know that claim.''

213 [331 P.2d 735]. ■ The discretion of the trial court is so broad that an order based upon facts concerning which reasonable minds might differ with respect to the necessity for the receiver will not be reversed (*Armbrust* v. *Armbrust*, 75 Cal.App.2d 272, 275-276 [171 P.2d 75]). To justify our interference, it must clearly appear that the appointment was an arbitrary exercise of power (*Moore* v. *Oberg*, 61 Cal.App. 2d 216, 221-222 [142 P.2d 433]).

■ Defendant first argues that plaintiffs established no joint or common interest in any property or fund as required by section 564. The trial court on the motion for receivership is not required to determine the ultimate issues involving the precise relationship of the parties. At this stage of the proceedings, nothing more than a probable joint or common interest in the property concerned need be shown (*Sachs* v. *Killeen, supra,* p. 213; *Associated Creditors' Agency* v. *Wong*, 216 Cal.App.2d 61, 66 [30 Cal.Rptr. 705]). Such an interest was indicated here by the percentage rental,[3] the construction loan subordination arrangement, the inclusion of both parties as co-trustors on the deeds of trust and the chattel mortgages, and the provisions for the assignment of all rentals to the holders of the deeds of trust in the event of default. These latter provisions increased the liabilities of plaintiffs far beyond those usually found in the usual lessor-lessee situation.

■ We are not impressed by defendant's argument that Article XXVII of the lease between the parties[4] precludes the finding of any common or joint interest in the property. Article V of the lease concerning the subordination of plaintiffs' land to the construction loans, by its very terms, strongly implies the existence of some common interest. In any event, the receivership question should not be determined exclusively on the basis of the provisions in the lease. ■ The appoint-

---

[3]Defendant contends that the percentage rental provision does not indicate that plaintiffs have the requisite interest. However, an interest in the profits, if established, has been held a significant factor in determining the necessity of a receiver (*Sachs* v. *Killeen, supra,* p. 213; *Baughman* v. *Reed*, 75 Cal. 319 [75 P. 222, 7 Am.St.Rep. 170]) and at this stage of the proceedings, the court was not required to determine whether plaintiffs were entitled to a portion of the gross receipts, as such, or whether they were merely a formula for computing additional rent.

[4]"ARTICLE XXVII LESSOR AND LESSEE NOT PARTNERS OR JOINT VENTURERS: It is mutually agreed that this instrument shall not in any way be construed to confer upon the Lessor any interest in the business of the Lessee in the demised premises nor authorize the Lessee to create or incur any debts, obligations, or liabilities for which the Lessor shall be or become liable nor shall this Lease be deemed to create a partnership between the Parties hereto."

ment of a receiver is an ancillary proceeding concerned with the preservation of the property subject to litigation pending its ultimate disposition pursuant to final judgment. ■ A receiver is not an agent of either party to the action but represents all persons interested in the property involved (*United States Overseas Airlines* v. *County of Alameda,* 235 Cal.App. 2d 348 at p. 353 [45 Cal.Rptr. 337]). ■ The pertinent question on a motion for a receivership is whether the facts alleged in a petitioner's complaint and affidavits establish at least a probability of a joint or common interest in an enterprise which is in danger of loss, removal, or material injury, as required by the statute. The allegations of the supporting documents in this case sufficiently disclose the required interest and danger and the trial court was justified in its findings.

■ Defendant asserts that a less drastic remedy would have maintained the status quo and that plaintiffs did not establish the imminency to justify an ex parte appointment of a receiver. In our opinion, the undisputed insolvent financial status of defendant and its hotel operations, together with defendant's threats to close down, indicated an immediate danger of irreparable injury to the going enterprise and to plaintiffs' interest in the total property. We have already noted the breadth of the court's discretion and can find no arbitrary abuse thereof in the appointment of the receiver, pursuant to subdivision 1 of section 564 of the Code of Civil Procedure.

■ It is contended that even if the receiver was legally appointed, the court abused its discretion in ordering defendant to pay the fees and expenses and counsel fees of the receiver and also the counsel fees incurred by plaintiffs on their petition. Defendant's authorities cited for this contention pertain to receivers whose appointments were either void or ordered on false or unsubstantiated showings and are not relevant here.

There is no merit in defendant's argument that plaintiffs should pay the costs and attorney fees because the court concluded that the interests of all parties would best be served by an injunction rather than a confirmation of the order appointing the receiver. The court's denial of confirmation was expressly based on defendant's stipulation to the mandatory injunction under the terms of which defendant was required to keep the business open and otherwise perform the covenants of the lease concerning accounting and payments

to plaintiffs. There is no question that under the facts here presented, the compensation and expenses of the receiver and the related attorney fees were properly chargeable to defendant. The amount thereof is within the sound discretion of the trial court (*Venza* v. *Venza,* 101 Cal.App.2d 678 [226 P.2d 60] ; *Kan* v. *Tsang,* 90 Cal.App.2d 538 [203 P.2d 86] ).

Defendant's contention that the receiver failed to comply with the written application for consent to employment of counsel required by rule 240, subdivision (b) of the California Rules of Court, is not borne out by the record which indicates that such application was properly made in the receiver's petition for authority and repeated in his petition for accounting. The fact that he may have hired the attorney prior to his application is not relevant. A receiver may act without prior approval of court and have his acts subsequently ratified (*Rochat* v. *Gee,* 137 Cal. 497 [70 P. 478] ). This rule is one of common sense necessitated by the fact that often, as here, a receiver is required to act in an emergency where no prior approval is possible. The retainer of counsel fees prior to court approval is a practical and mechanical necessity. There is no question that the court has authority to order the payment of attorney fees chargeable by counsel for the receiver (*Scarpa* v. *Scarpa,* 40 Cal.App. 345 [180 P.637] ).

The portions of the order appealed from are affirmed. The appeals from the interim orders are dismissed.

Agee, Acting P. J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.