[Nos. F007922, F008352, F009787. Fifth Dist. Apr. 5, 1988.]

SECURITY PACIFIC NATIONAL BANK, Plaintiff and Respondent, v.
BRUCE R. GEERNAERT et al. Defendants and Appellants.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through V.

1426

COUNSEL

Hillel Chodos, Gina M. Putkoski, Freeman, Freeman & Smiley and David M. Browne for Defendants and Appellants.

Wild, Carter, Tipton & Oliver and C. Richard Walters for Plaintiff and Respondent.

## OPINION

### INTRODUCTION

**BALLANTYNE, J.**—Security Pacific National Bank (Security Pacific) made a series of crop loans to Switchback Ranch between 1982 and 1984. The ranch, run as a general partnership, defaulted on loan payments causing Security Pacific to bring this action. In addition to the default, bitter disputes arose between the general partners. Bruce Geernaert eventually bought out the other partners and agreed to indemnify them for any claims by Security Pacific. In the fall of 1985, the bank brought a motion for summary judgment against Bruce Geernaert and his wife, Daphne Geernaert, which was granted in January of 1986. At the same time, the general partners obtained a partial adjudication of issues surrounding the indemnification agreement. The Geernaerts declared bankruptcy. These proceedings were stayed until the bankruptcy court dismissed the Geernaerts' bankruptcy petition in August of 1986.

The Geernaerts have filed three appeals which have been consolidated. The appeals affect only the judgments obtained against the Geernaerts by Security Pacific. The other general partners are not parties to the instant appeals.

### FACTS AND PROCEEDINGS BELOW

Bruce Geernaert and Robert Smith were partners and owners of 641 acres of almond orchards called the Switchback Ranch. Geernaert and Smith wanted more cash. Geernaert's attorney, Carl Albert, offered to raise cash in 1981 by setting up a tax shelter syndication. Albert brought two more general partners, Michael Levitt and Stewart Jaffe, into the partnership. Albert, Levitt and Jaffe received a one-half interest in the Switchback partnership in exchange for their sale of undivided limited partnership interests to over 50 investors in approximately 600 acres.

In spring of 1984, disputes arose between Geernaert and the other general partners. Each side discussed the possibility of buying out the other. Geernaert filed suit to dissolve the partnership. Judge Davis appointed Milo Hall as receiver to wind up the dissolution and to manage the 1984 crop.

Security Pacific loaned large sums of money to finance the cost of producing crops in 1982, 1983 and 1984. Each general partner and his wife signed continuing personal guarantees, with the exception of Daphne Geernaert who refused to pledge her separate property. By January 15, 1984, the partnership had defaulted on four different loans. In July of 1984, Security Pacific filed a complaint against the partnership and each partner seeking

judgment on the defaulted loans. The partnership owed principal of $1,027,644.50 and interest of $87,029.11 accruing at a daily rate of $380.07.

The bank moved to have John O. Kirkpatrick appointed to replace Milo Hall as receiver. By orders of court entered July 11 and July 17, 1984, Kirkpatrick was made receiver of the Switchback Ranch. His primary duty was to manage the harvest and sell the 1984 almond crop.

On September 5, 1984, Judge Davis heard a motion for rescission by the Albert group. The Albert group also proposed to purchase the partnership for $50,000 and an agreement to indemnify the Geernaerts for all moneys owed to Security Pacific. During oral argument Geernaert's counsel, Hillel Chodos, stipulated that his client would purchase the partnership assets for $50,001, accepting the transaction as proposed by the Albert group. On November 16, 1984, Bruce Geernaert executed the offer to purchase the Switchback partnership, subject to secured liabilities. Geernaert also agreed to indemnify and hold harmless all general partners from Security Pacific claims and investor-purchaser claims.

John Hancock Life Insurance Company, the holder of the first deed of trust on the farm property, recorded a notice of default and proceeded with foreclosure on the property on October 12, 1984. In response, on November 2, 1984, before Judge Davis, Security Pacific brought motions to have net crop proceeds applied to outstanding crop loans. The motion was granted. The court then heard motions for a writ of attachment and a writ of possession on farm equipment. The farm equipment had an estimated value of $42,000. On December 7, 1984, Judge Davis granted the motion for writ of attachment but denied the writ of possession without prejudice. After reconsideration, however, the court denied the writ of attachment. Judge Davis noted that there appeared to be sufficient collateral to secure the debt.

On February 15, 1985, the receiver Kirkpatrick filed his second report of accounting. The report covered the period of time between October 1, 1984, and February 15, 1985. The 1984 almond crop was sold to Tenneco West. The payment rate was 60 cents per pound. Total settled nut meats were calculated to be 1,402,614 pounds.

Kirkpatrick had received $705,349.51 in payment from Tenneco West as of February 15, 1985. Security Pacific had loaned an additional $96,188.02 between October 1, 1984, and February 15, 1985, to harvest the 1984 crop. Security Pacific was paid $705,392.46 from net proceeds.

Total cash receipts were $826,726.40 and total cash disbursements were $825,538.55 for this period. The remaining assets totalled $42,342.05 in

equipment and cash. Kirkpatrick estimated additional payments from Tenneco to be made by November 1985 would be in a range of from $400,000 to $560,000 for the 1984 crop proceeds. Kirkpatrick's report was approved and he was discharged by Judge Davis on June 12, 1985.

The bank noticed a motion for summary judgment for November 26, 1985. The motion was supported by the declaration of John Hunt, vice president of Security Pacific, officer in charge of the Switchback loans and custodian of the loan documents attached as exhibits to the motion. Hunt's declaration was executed under penalty of perjury. Hunt purported to be knowledgeable concerning the matters set forth in his declaration. He stated that as of October 23, 1985, the total debt had been reduced by $588,679.88. Hunt incorporated exhibit "C" by reference into his declaration. Exhibit "C" set forth the remaining debt at $635,430.17 in principal and $38,417.36 in interest accruing daily at a rate of $209.98. Hunt made no statement in his declaration setting forth how crop proceeds were applied to particular loans or how crop proceeds were allocated between principal and interest.

Counsel for Security Pacific, C. Richard Walters, filed a supplemental declaration to the summary judgment motion. He declared on behalf of the bank that an additional payment from Tenneco West in the amount of $119,408.33 had been made. This reduced the debt to $534,075.86 in principal and $22,632.34 in interest accruing daily at a rate of $175.89. Walters attached a letter from vice president Hunt dated November 13, 1985, setting forth the accounting. The letter stated that the payment was the "final payout of the 1984 almond crop proceeds."

Geernaert objected to both declarations. Concerning Hunt's declaration, Geernaert claimed that the declaration lacked foundation and was conclusory because it set forth ultimate facts rather than evidentiary facts. Regarding the second declaration by Walters, Geernaert objected on foundational and hearsay grounds.

Geernaert's counsel, Hillel Chodos, opposed the summary judgment motion by asserting that Security Pacific actively attempted to derail financing efforts by the receiver for the 1985 crop in obtaining financing through Lloyds Bank.

Chodos requested a continuance on the summary judgment motion until he could discover whether or not Security Pacific intentionally impaired efforts to produce a crop in 1985. Chodos admitted that until the motion for summary judgment was brought, discovery had not been undertaken to save costs.

Chodos also claimed that as of November 11, 1985, no proper accounting had been made of crop proceeds. He submitted an agreement between Security Pacific and Lloyds Bank regarding the disbursement and management of 1985 crop proceeds.

The motion for summary judgment was held before Judge Lewis King. On January 22, 1986, the court entered its decision granting the motion for summary judgment against Bruce and Daphne Geernaert.

Geernaert declared bankruptcy, staying proceedings in his case. On August 1, 1986, the order lifting automatic stay was finally entered.

On August 21, 1986, Judge King's order for summary judgment was entered for $534,075.36 principal and $22,632.44 interest accruing daily at a rate of $175.89. The order noted that the judgment could not be satisfied from Daphne Geernaert's separate property. The order also awarded attorney fees without specifying an amount.

On August 20, 1986, Judge King's order and judgment were entered against Daphne Geernaert. On September 30, 1986, Judge King's order and judgment were entered against Bruce Geernaert. Before reaching the merits of Security Pacific's motion for summary judgment, we first discuss a legal issue of first impression in California.

## DISCUSSION

### I.

### SALE OF COLLATERAL BY COURT-APPOINTED RECEIVER UNDER CALIFORNIA UNIFORM COMMERCIAL CODE SECTION 9504

 The Geernaerts contend that they received no notice of sale of the 1984 crop proceeds or other collateral. A creditor's failure to follow the notice requirements of section 9504 acts to bar the creditor from obtaining a deficiency judgment. (*Rutan* v. *Summit Sports, Inc.* (1985) 173 Cal.App.3d 965, 971 [219 Cal.Rptr. 381]; *American Business Credit Corp.* v. *Kirby* (1981) 122 Cal.App.3d 217, 220-221 [175 Cal.Rptr. 720]; *Western Decor & Furnishings Industries, Inc.* v. *Bank of America* (1979) 91 Cal.App.3d 293, 306-308 [154 Cal.Rptr. 287]; *Barber* v. *LeRoy* (1974) 40 Cal.App.3d 336, 341-343 [115 Cal.Rptr. 272]; *Atlas Thrift Co.* v. *Horan* (1972) 27 Cal.App.3d 999, 1009 [104 Cal.Rptr. 315, 59 A.L.R.3d 389].)

Security Pacific argues that it was excused from notifying the Geernaerts of the sale of collateral because the collateral was sold by a court-appointed

receiver. The threshold issue on appeal is whether the sale of collateral by a court-appointed receiver relieves the creditor from the notice requirements of section 9504.

Counsel for the bank argues, however, that the crop proceeds and collateral here were not sold by the secured party. They were sold instead by a court-appointed receiver. Without citation to any authority or analysis of section 9504, the bank asserts that a sale of collateral by a court-appointed receiver falls outside the ambit of section 9504.

We have found no California opinion on point. The Court of Appeals of New York, however, has considered this issue. A unanimous decision of seven justices in *Executive Bank of Ft. Lauderdale* v. *Tighe* (1981) 54 N.Y.2d 330 [445 N.Y.S.2d 425, 429 N.E.2d. 1054] held that the sale of collateral must be by a secured party for the notice requirement of section 9504 to apply. Analyzing the captions of section 9504, the *Tighe* court reasoned that section 9504 applies only where the sale of collateral is by the secured party, not where the sale is made by a court-appointed receiver. (429 N.E.2d at pp. 1056-1057.) There, the sale was made by a trustee in bankruptcy. The *Tighe* decision is soundly reasoned. The express provisions of section 9504, subdivision (3), apply to the secured party. The entire framework of section 9504 is directed toward the sale of collateral by the secured party. Where the sale occurs under the authority of a receiver or a trustee in bankruptcy, it is made by an independent party under judicial supervision. The secured party no longer controls the time or place of sale.

Commercially reasonable sales are presumed to be in good faith and at the greatest possible market rate. Unless collateral is sold by a creditor in a commercially reasonable manner, debtors run the risk of collusive tactics by secured parties or their agents. Unscrupulous creditors could easily sell (or buy) collateral well below market value, obtain a deficiency judgment against the debtor for the difference, resell the collateral and obtain a substantial profit over the amount of the original debt. The notice provisions of subdivision (3) of section 9504 are designed to protect the debtor from any form of double recovery by the secured party. Other than the exceptions noted in subdivision (3), commercially reasonable sales are those made with notice to the debtor.

Because the 1984 crop was sold by a court-appointed receiver, the debtor had even greater protection than that afforded under California Uniform Commercial Code section 9504. Although Chodos always referred to Kirkpatrick as "the bank's receiver," this description is legally inaccurate.

■ Receivers are appointed under the provisions of Code of Civil Procedure section 564 et seq. A receiver is an officer or representative of the court

appointed to manage property that is the subject of litigation. (*Murray* v. *Etchepare* (1901) 132 Cal. 286, 287-288 [64 P. 282].) The receiver is not an agent of either party to the action. The receiver represents all persons interested in the property. (*Maggiora* v. *Palo Alto Inn, Inc.* (1967) 249 Cal.App.2d 706, 712 [57 Cal.Rptr. 787]; *United States Overseas Airlines* v. *County of Alameda* (1965) 235 Cal.App.2d 348, 353 [45 Cal.Rptr. 337]; *Burrows* v. *Jorgensen* (1958) 158 Cal.App.2d 644, 649 [323 P.2d 150].) In other words, a receiver acts as a fiduciary on behalf of both parties as a representative and officer of the court.

■ The receiver's appointment must be noticed. Geernaert could have challenged Kirkpatrick's appointment at the beginning of the proceedings. (*Painter* v. *Painter* (1902) 138 Cal. 231, 238 [71 P. 90].) The receiver's sale of property must also be noticed. (Code Civ. Proc., § 568.5.) The designated record here contains only the receiver's second accounting and report and the court's discharge order. Kirkpatrick's second report, however, refers to a first report and 14 interim reports and notices. If there were a defect in the receiver's notice of sale or a mismanagement of collateral, the Geernaerts could have objected or moved for surcharge or for Kirkpatrick's discharge.

■ It is axiomatic that the receiver's sale and final accounting can only be disposed by order and direction of the court. (*Adams* v. *Haskell & Woods* (1856) 6 Cal. 113, 116.) A court abuses its discretion in confirming a fraudulent, unfair or oppressive sale. (*Cal-American Income Property Fund VII* v. *Brown Development Corp.* (1982) 138 Cal.App.3d 268, 274-275 [187 Cal.Rptr. 703].)

■ The record before this court is incomplete concerning Kirkpatrick's notice to the parties for the sale of the 1984 crop. Nothing in the record before us, however, indicates that the Geernaerts ever objected to Kirkpatrick's appointment, his notification of sale, his management of the 1984 crop, or his final accounting and discharge. The sale of collateral was made pursuant to the trial court's order. Even assuming that Kirkpatrick's notice of the crop proceeds was insufficient under Code of Civil Procedure section 568.5, the issue was not raised below and cannot be raised for the first time on appeal. (*Bardessono* v. *Michels* (1971) 3 Cal.3d 780, 794 [91 Cal.Rptr. 760, 478 P.2d 480, 45 A.L.R.3d 717]; *Doers* v. *Golden Gate Bridge, etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]; *CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 618 [222 Cal.Rptr. 276].)

The Geernaerts challenged the sufficiency of notice of the sale of collateral under California Uniform Commercial Code section 9504, subdivision (3). The sale was conducted by an independent, court-appointed receiver,

not the secured party. The bank as secured party was, therefore, exempted from notifying the debtor of the *sale* of the 1984 almond crop under section 9504 because it did not conduct the sale. Furthermore, California Uniform Commercial Code section 9507, subdivision (2), holds that a disposition of collateral approved in any judicial proceeding "shall conclusively be deemed to be commercially reasonable. . . ." We note, however, that the receiver Kirkpatrick was discharged in June of 1985 and that Security Pacific failed to make a proper accounting of 1984 crop proceeds it received after Kirkpatrick's discharge. Security Pacific must still make a proper accounting for any proceeds it received for the 1984 crop *after* Kirkpatrick's discharge.

We further note that the crop mortgage covers future crops and there is no proper record before us as to what happened to 1985 crop proceeds. To the extent Security Pacific may have sold any other collateral, it would still be bound to follow the notice provisions of section 9504.

II.-V.*

. . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

All judgments and orders from which Bruce and Daphne Geernaert appeal in these three consolidated appeals are reversed. Each side is to bear its own costs on appeal.

Hamlin, Acting P. J., and Brown, (G. A.), J.,† concurred.

A petition for a rehearing was denied May 4, 1988, and the opinion was modified to read as printed above.

---

*See footnote, *ante,* page 1425.

†Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.